## KOCH & DREYFUS *v.* H. Q. BRIDGES et al.

1. EXECUTIONS — SHERIFF'S SALE — LAND MUST BE SOLD UNDER EXECUTION AT THE COURT-HOUSE OF THE COUNTY. — The provision of art. 277, p. 528, Rev. Code 1857, as to the place of sale of land under execution, is imperative, and a sale at any place other than the court-house of the county is void. The directions of the statute as to giving notice of the sale are merely directory.

2. CONSTRUCTION OF STATUTES — RULE AS TO DIRECTORY PROVISIONS. — Getting rid of a statutory provision, by calling it "directory," is not only unsatisfactory on account of the rule itself, but it is the exercise of a dispensing power by the courts which approaches so near legislative discretion, that it ought to be exercised with reluctance, and only in extraordinary cases where great public mischief would otherwise occur, or important private interests demand the application of the rule.

3. SAME — SAME. — The requirements of a statute can never be dispensed with as being directory, where the act or omission of it, can by any possibility work advantage or injury however slight, to any one affected by it.

4. SAME — LEGISLATIVE INTENTION AS A GUIDE. — Judicial functions are always best discharged by an honest and earnest effort to ascertain and carry into effect the intention of the law-making power.

5. SAME — WHERE THE STATUTE IS PLAIN AND UNAMBIGUOUS. — Where a law is plain and unambiguous, the legislature shall be intended to mean what they have plainly expressed, and no room is left for construction.

6. SAME—FORCE OF NEGATIVE AND AFFIRMATIVE WORDS.—Negative words will make a statute peremptory, and it is apprehended affirmative may, if they are absolute, explicit and peremptory, and show that no discretion is intended to be given.

7. SAME—"EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS."—Where, in an instrument or a statute, there are general words first, and an express exception afterward, the principle has been said to apply "*expressio unius est exclusio alterius.*"

8. INTERPRETATION OF STATUTE—SO AS TO GIVE EFFECT TO ALL THE WORDS.—Statutes are to be interpreted so as to give effect to all the words therein, if such interpretation be reasonable and be neither repugnant to the provisions nor inconsistent with the objects of the statute.

APPEAL from the chancery court of Pike county. PEYTON, Chancellor.

The town of Summit in which the land was sold under execution, was not the county seat of the county. The other facts of the case are distinctly stated in the opinion of the court.

*Harris & Withers*, for appellants.

The single question presented is, whether this sale was absolutely void, not merely irregular.

The advertisement, the appointment of days of sale by the statute, and the fixing of the place of sale, at the court-house of the county, are directions as to the manner of sale, intended to secure publicity and competition. All these directions have the same object, and there is nothing to indicate that the framers of the statute attached more importance to one of these directions than to any other. They all combine to make the sale public and notorious. They are all in the nature of the notice of the sale.

The judgment fixes the liability of the debtor and authorizes the sale, and the execution commends it. These are indispensable, because they alone confer the power to sell. Their absence renders the sale void. The notice and the place of sale relate to the manner of the sale, and the omission of any one of the directions how to sell is an irregularity in the execution of the power, which does not render the sale void.

It will be observed that all the directions are enforced by the word "shall," and if by reason of this word one direction is mandatory, all the directions are mandatory.   Every argument founded on the reasons for selling at the court-house door apply equally to the advertisement, the day and hours of sale.   Code, 528.

The argument that the specification of a particular place of sale by the statute is an implied prohibition of the sale at any other place is applicable to all directory statutes. The specification of the mode of advertising the length of time, the days of sale, and the hours of sale, because it may with equal propriety be said any other mode of advertising, any other day or any other hour of sale than that specified is impliedly prohibited, and we trust that the court will not venture upon the dangerous ground of reasoning on a conjectural hypothesis of legislative intent investing one of a series of directions as to the manner of executing final process with paramount importance, when so far as the statute itself is concerned, no distinctions is made, and all the directions are placed on the same footing, and all have a common object.

In Wheaton v. Sexton, 4 Wheat. 503, the supreme court of the United States said the purchaser depends upon the judgment, the levy and the deed.   All other questions are between "the parties to the judgment and the marshal," under the old law, in all essential particulars, like the Code. In perhaps the very best-reasoned judgment of the very ablest of our judges, the case of Minor v. Selectmen of Natchez, 4 Smedes & Marsh. 631, the doctrine of the case of Wheaton v. Sexton is distinctly announced as applicable to the statute of this state regulating sheriff's sales.   In the case of Minor v. Natchez, the question was examined by both the able counsel and the court with comprehensive and searching scrutiny, and it was held that a departure from the directions of the statute did not vitiate the sale, and this case has been followed.   10 Smedes & Marsh. 258. Certainly never over-ruled, and cannot be shaken.   It is con-

tended that where irregularities occur in the mode of sale, the doctrine of that case applies only to purchasers without notice of such irregularity. It is manifest, however, that the decision does not rest on such grounds. It is placed on the ground that purchasers are not bound to take notice of any thing but the judgment and execution, and are not affected by irregularities in them. The purchaser is bound to see there is a judgment, an execution and a levy ; but whether these be regular or not is no concern of his. They are matters for the parties to the judgment.

It is sufficient for us that the admission, that the sale is not necessarily and absolutely void by reason of a departure from the prescribed manner of the sale, is decisive of this case, because the validity of the sale depends, not upon following implicitly the statute, but upon other circumstances not therein enumerated, affecting the purchaser and the sale ; then the sale cannot be collaterally impeached because it is not necessarily void. The parties to the judgment with whom the matter rests to make objection may have requested the sale to be made at Summit. For aught that appears, the sale was fair and for a full price, and satisfactory to those parties ; at all events, they are not objecting. The sale there may have tended to subserve the prime object of the statute, greater publicity and the better prospect of active competition. Indeed, we see that the parties objecting to the sale preferred to sell under their decree of foreclosure at this same market-house in Summit. There is every reason to infer that in the view of the parties to the judgment a sale of a town lot in the town in which it is situated was more likely to be fruitful than one at a point distant from the locality. A court of chancery would not set aside the sale except that on the proof that it was unfair, and at an under value ; certainly not unless in a direct proceeding by a party having the right to object, and on the ground that the sale was a sacrifice of the property.

In Cook v. Toombs, 36 Miss. 689, the court decided that

such sales, that is, sales affected by irregularities, can be set aside by direct proceeding. This is the sound, conservative doctrine.

If we set the precedent that the place of sale is of that importance that a sale elsewhere, though not objected to by the parties to the judgment, is an absolute nullity, because the purchaser must know it is not the place prescribed by law, we must go farther, and say that he must also know the time of day, and, if it be shown that the sale was at ten o'clock instead of eleven, it is a nullity.

The proposition for which we contend is, that the departure from the prescribed mode of sale does not, *ipso facto,* render the sale a nullity, and that it follows that the sale is only voidable at the instance of those injuriously affected by the departure, in a direct proceeding to set aside the sale, and that the objection cannot be raised by a demurrer to a bill seeking relief founded on the title aquired at such sale, nor by an objection to its introduction as evidence of title in an action of ejectment. This direct proceeding would be by bill in equity, and it would be essential to such a title that it should aver that the property did not bring a fair price, and that a resale would realize more money, and an offer to refund the purchase-money. To hold the deed void on demurrer, or to exclude it as evidence, involves the idea that under no conceivable state of case could the title be upheld.

Whether the defendants below can, by a cross-bill, bring the point in contest by offering to refund the purchase-money, and by averring a sacrifice of the property by the departure from the statute, is not involved in the question before this court. A direct proceeding gives to the purchaser the opportunity to vindicate the sale, and obtain justice by the return of his money.

In conclusion, we advert to the circumstance, in considering the effect of the statute, that one of the codifiers was the learned judge who decided the case of Miner *v.* City of Natchez. In framing the act in the Code, it is quite impos-

sible that this case was not present to his mind, and, indeed, to the minds of his associates.    In the opinion in that case, a distinction is drawn between a statute which (as in Tennessee) declares that a "sale made otherwise than in the manner prescribed' shall be void" and our statute, which contains no such declaration, and on this the argument is made that the legislature did not intend that the sale should be rendered null by the omission to follow the directions of the statute.    The Code omits this declaration, and it is fair to presume that they adopted it with the exposition of a similar statute which had been accepted by the high court of errors and appeals.    It is an old rule, that when we borrow a statute from another state, we are to be understood to take it with the interpretation given to it by the court of last resort of the state from which we borrow it.    If, therefore, we find in the Code an old statute which had received a judicial construction, embodied without material change in the Code, it will continue to be interpreted as heretofore, on the idea that it was adopted or continued as interpreted, otherwise it would have been altered so as to give a different meaning.    When the case of Miner v. City of Natchez was again before the court, 10 Smedes & Marsh. 25, Judge Clayton, who had reserved his opinion on the point of defective notice, yields his opinion in support of the chief justice on the ground that the statute did not declare the sale void.

*E. Safford*, for appellee.

The bill is founded upon a sale and deed of land under *fieri facias* by the sheriff of Pike county, and alleges that the sale was made "at the market house, in the town of Summit." Holmesville is the county seat of Pike county, and Summit is an incorporated town, eleven miles from Holmesville. That the sale was not made at the courthouse, is a fact of which the court will judicially take notice without further proof.  1 Greenl. on Ev., ch. 2, § 5, 6.

The statute on the subject of sheriff's sales (see Rev. Code,

p. 528, art. 277), declares, that "all sales by any sheriff," etc., by virtue of any execution, etc., "shall be made at the court-house of the county, except personal property too cumbersome," etc. The word "shall" is mandatory in its common and ordinary acceptation and meaning, and therefore must be so regarded in construing it. Rev. Code, p. 643, art. 1. The naming of the court-house excludes all other places. *Expressio unius est exclusio alterius.* It was not necessary that the statute should in terms declare that sales of real estate should not be made elsewhere than at the court-house, for such is the legal effect of the language used, according to the maxim just cited, and which is recognized as a sound rule for construction of statutes. By this rule of construction such sales are in effect forbidden to be made elsewhere than at the court-house ; as if the statute had expressly added after the word "court-house" the words, "and not elsewhere." Reasons of public policy undoubtedly influenced the minds of the legislature in making this law. The evil sought to be prevented was the making of sales of real estate at private places, and on days and at hours unfavorable to competition in bidding. The court-house is generally the most public place in the county. The days selected are more frequently than others public days, and the hours designated, those in which there is generally the largest attendance, especially of persons residing away from the county seat. We therefore conclude that such sales are to be limited as to place and time, to the place and times specified in the statute.

A further argument in support of this view of the question may be drawn from the exception in the statute to wit : "Except personal property, too cumbersome to be removed." It seems that even such personal property can only be sold elsewhere than at the court-house by express statutory permission. We here call attention again to the maxim above cited, and insist that it applies to this branch of our argument. The naming of cumbersome personal property alone, and granting permission to sell it where it

may be found, is of itself a constructive prohibition of a sale of any other kind of property elsewhere than at the court-house.

It is contended, however, by appellants that the statute is merely directory, and that this sale, made at Summit, although irregular, is still valid; and, in support of this position the cases of Minor v. President and Selectmen of Natchez, reported in 4 Smedes & Marsh. 602, and 10 ib. 246, are cited as authority for appellants. We propose briefly to examine these cases.

In the cases cited, the irregularity in question was the failure of the marshal to give the requisite legal notice of sale. The manner of giving notice of the sale, or whether notice was given at all, was a fact of which the purchaser was not necessarily cognizant; and, indeed, in the very nature of the case he could not know just how the notice was given, or that it was given at all. Nor does it appear from the case cited, that the purchaser at the marshal's sale had any knowledge or notice of the alleged irregularity. He purchased, at what appeared to him a regular sale, and being thus a *bona fide* purchaser, the court held the purchase valid. It should here be particularly observed that the court limits this protecting rule to *bona fide* purchasers. See 10 Smedes & Marsh. 258, tenth line from the bottom of page; also, 4 ib. 623, 624, 625, 626, 630. The decisions in other states, cited by the high court at the pages just referred to, the high court adopting the same view, confine the principle to cases of *bona fide* purchasers.

Can it be said that a purchaser at sheriff's sale, under *fieri facias* at the market house, in the town of Summit, was a *bona fide* purchaser in the sense in which that term is used in the cases cited? We think not. The purchaser had knowledge (as every man is supposed to have) of the law which limits such sales to the court-house. The statute is too plain to be misunderstood, and the purchaser is bound by it. The sale being made, as he knew, at a place not

only not allowed, but constructively prohibited by law, he acquired no title by his purchase. Such a sale is void.

Keeping in mind the limitation of the rule to *bona fide* purchasers, if it be contended that appellants were such purchasers, let us test that question by one or two hypothetical cases, involving the principle contended for. Suppose a sheriff about to sell land under a *fieri facias*, of which sale no notice has been given, commences his public cry by this announcement: "Gentlemen, I am now about to sell this land under this execution, but I give you all notice that the sale has not been advertised at all." Would the purchaser at such a sale be regarded as a *bona fide* purchaser, and be protected in his purchase? Is not such a sale void? Again, suppose a sheriff advertise a sale to take place at midnight, and makes it at that hour. Would such a sale be valid? Most assuredly not.

We contend that the sale is void for another reason, applicable to the facts of the case. The statute, under the construction that we contend for, and in view of the reasons of public policy above suggested, constructively prohibits a sale of real estate elsewhere than at the court-house. This being so, the sale is void. "If the sheriff do a thing which he is prohibited from doing, his acts are void." See, again, 10 Smedes & Marsh. 258.

PEYTON, C. J.:

Nathan Koch and Leon Dreyfus, on the 8th day of June, 1870, filed their bill of complaint in the chancery court of Pike county, against H. Q. Bridges, S. L. Weathersby, and M. E. Weathersby, alleging that Samuel Kaiser and Albert Cohen recovered a judgment in the circuit court of said county against Nathan Schwab, on the 6th day of March, A. D. 1860, for the sum of $155 21, which was regularly enrolled, as the law requires, on the 20th day of March, 1860. And at the time of the rendition of said judgment against him, the said Schwab possessed and owned in his

own right a certain parcel or lot of land in the town of Summit, in said county.

That the said Nathan Schwab, on the 11th day of December, 1860, executed a mortgage of the same property to one H. E. Weathersby, to secure the payment to him of the sum of $700, which mortgage was duly acknowledged and recorded.

That on the 25th day of July, 1866, Seaborn L. Weathersby and M. E. Weathersby, administrator and administratrix of the estate of said H. E. Weathersby, deceased, filed their bill in the chancery court of said county to foreclose the equity of redemption, and to sell the said lot for the payment and satisfaction of the debt secured by said mortgage.

That on the 31st day of March, 1868, *pluries* execution was issued on said judgment of Kaiser and Cohen against said Nathan Schwab, under and by virtue of which the said lot of land was sold by the sheriff, in the town of Summit, on the 4th day of May, 1868, to the said Kock and Dreyfus, for the sum of $180, to whom the sheriff executed and delivered a deed for the same, which was duly acknowledged and recorded.

That on the 19th day of March, 1870, a decree was rendered by said chancery court foreclosing the equity of redemption, and ordering the property to be sold for the payment of the debt secured by the mortgage, and H. Q. Bridges was appointed by the court a special commissioner to execute said decree, who was proceeding to execute the same. The bill concludes with a prayer for an injunction restraining the said commissioner and administrators from further proceeding under said decree, and that, upon final hearing of the cause, the injunction may be perpetuated.

The defendants appeared and demurred to the said bill of complaint for the following causes:

1. There is no equity on the face of the bill.

2. The complainants have failed to show any title in themselves to the land in controversy.

3. That the place of sale mentioned in said bill, to wit, the market house in the town of Summit, is not a legal place for a sheriff's sale of land.

The demurrer was sustained by the court and the bill dismissed. And hence the case comes to this court by appeal on the part of the complainants, who assign for error the action of the court below in sustaining the demurrer and dismissing the bill.

There is but one question in this case and that involves the construction of our statute which provides that "all sales by any sheriff or other officer, by virtue of any execution or other process, shall be made at the court-house of the county, except when personal property, too cumbersome to be removed, shall be levied on, which may be sold at the place where the same may be found, or at any other convenient place, and also except where cattle, hogs, sheep or stock, other than horses and mules, are levied on, the sale of which may be made within the usual hours, on ten days' notice, at the most public place in the neighborhood of the defendant; and such sales may be made on the first Monday of every month, or on the first Monday or Tuesday of each term of the circuit court of the county." Rev. Code, 528, art. 277.

The obvious principle that prevails in all rules of construction of statutes is, to carry into effect the intent of the legislature and to secure the object intended to be secured by the statute. This statute was evidently intended to secure certainty and uniformity as to the place of sale of land by the sheriff under execution or other process at law. The public are presumed to know the place designated by the law for the sale of real estate under an execution at law, and every person wishing to purchase such property would know, without reference to advertisements, where the sale should take place. If this provision of the statute were merely directory, the sheriff, instead of selling at the court-house, the most public place in the county, might sell in the most obscure corner of the county without giving the notice

directed by law to a *bona fide* purchaser, at a great sacrifice of property, for the want of public notice of the time and place of sale. Against this evil the law intended to provide by fixing the time and place of sale of this kind of property ; and to construe this provision of the statute with respect to the place of sale in any other way than as imperative, would tend to defeat instead of carrying into effect the intent and object of the law-makers, and would be at war with the well-settled rule of construction above alluded to. To our minds it is obvious at least, that the surest if not the only way of effectuating that intent, and guarding against the evils at which it was aimed, is to hold the requisition of the act imperative.

The counsel for the appellants contend, that the provision of the statute pointing out the place of sale of real estate is merely directory, and a sale at any other place would be equally valid. We do not concur with the counsel in this view of the law.

This mode of getting rid of a statutory provision by calling it directory is not only unsatisfactory, on account of the vagueness of the rule itself, but it is the exercise of a dispensing power by the courts, which approaches so near legislative discretion that it ought to be resorted to with reluctance, only in extraordinary cases, where great public mischief would otherwise ensue, or important private interests demand the application of the rule. There is no more propriety in dispensing with one positive requirement than another ; a whole statute may be thus dispensed with when in the way of the caprice or will of a judge. And besides, it vests a discretionary power in the ministerial officers of the law which is dangerous to private rights ; and the public inconvenience, occasioned by the want of uniformity in the mode of exercising a power, is a strong reason for bridling this discretion. It is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive, the courts are not called upon to give reasons why it was enacted. A judge should rarely take upon himself to

say that what the legislature have required is unnecessary. He may not see the necessity of it, still it is not safe to assume that the legislature did not have a reason for it; perhaps it only aimed at certainty and uniformity. In that case, the judge cannot interfere to defeat that object however puerile it may appear. It is admitted that there are cases where the requirements may be deemed directory. But it may be safely affirmed that it can never be where the act, or the omission of it, can, by any possibility work advantage or injury, however slight, to any one affected by it. In such case, the requirement of the statute can never be dispensed with.

The legislative body is the supreme power of the state, and, whenever it acts within the pale of its constitutional authority, the judiciary is bound by it, and it is not competent to the latter tribunal to dispense with a regulation or requisition plainly prescribed by the former, or, to say that this mode, that, or the other, is as good as the one dictated by the legislature; for this, in fact, would be placing the judiciary above the legislature, by enabling the former to nullify the acts of the latter, or to supersede them by substitutes to which the legislature might not have assented had the proposition been submitted to it. The intention of the legislature should control, absolutely, the action of the judiciary. Where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to the wisdom or justice of the particular enactment. No principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the legislature shall be intended to mean what they have plainly expressed, and, consequently, no room is left for construction. And courts should adhere to the cardinal rule, that the judicial functions are always best discharged by an honest and earnest

desire to ascertain and carry into effect the intention of the law-making body.

Negative words will make a statute imperative.; and, it is apprehended, affirmative *may*, if they are absolute, explicit and peremptory, and show that no discretion is intended to be given. Dwarris on Stat. 228. Affirmative words in a statute may be construed as a negative of what is not affirmed. Byron v. Sundburgh, 5 Texas, 428. Affirmatives in statutes that introduce new laws imply a negative of all that is not in purview ; so that a law directing a thing to be done in a certain manner, implies that it shall not be done in any other manner. United States v. Case of Han Purals, 1 Paine, 406 ; and 6 Dane's Abr. 591 to 593. It is only when a statute is ambiguous in its terms, that courts may right-fully exercise the power of controlling its language, so as to give effect to what they may suppose to have been the intention of the law-makers. Wood v. Adams, 35 N. H. 36. Denman, Ch. J., in 4 Nev. & Man. 426, said : "Where I find the words of a statute perfectly clear, I shall adhere to the words."

Statutory requisitions are deemed directory only when they relate to some immaterial matter, where a compliance is matter of convenience rather than of substance. The People v. Schermerhorn, 19 Barb. 540 ; Hardin v. Owing, 1 Bibb, 205. But when a power to affect property is con-ferred by statute upon those who have no personal interest in it, such power can be exercised only in the manner and under the circumstances specified. Strict compliance is necessary in all the essential prerequisites ; and this makes the statute mandatory. And this accords with the doctrine laid down by Lord Mansfield, in the case of Rex v. Lox-dale, 1 Burr. 447, in which he says : "There is a known distinction between circumstances which are of the essence of a thing required to be done by an act of parliament, and clauses merely directory."

In the case under under consideration, the place of sale is believed to be of the essence of the sale, and that the

statute in this respect is mandatory.   And this construction of the statute is sustained by the exceptions contained in it.   These exceptions prove the rule, where in an instrument or a statute there are general words first and an express exception afterward, the ordinary principle of law has been said to apply *expressio unius est exclusio alterius.* If the statute, with respect to the place of sale is merely directory, as insisted by the counsel for the appellants, and the sheriff could sell at any place in the county, the exceptions expressed in the statute would be entirely useless and without effect.   But statutes are to be interpreted so as to give effect to all the words therein, if such interpretation be reasonable, and be neither repugnant to the provisions nor inconsistent with the objects of the statute.   Every part of the statute must be viewed in connection with the whole so as to make all its parts harmonious, if practicable, and if it will admit of a construction which will give effect and operation to every part, it ought never to be construed so as to draw after it unnecessary and superfluous provisions. It is never to be presumed that the legislature intended that any part of a statute should be without its proper meaning, force or effect.   To give the construction contended for on the part of the appellants would be a judicial repeal of the statute.

In the case of Merchant v. Langworthy, 6 Hill, 647, an annual meeting was required to be held in each school district, and at each annual meeting, the time and place of holding the next annual meeting was to be fixed.   For greater caution and to give greater publicity to the meeting, the statute directed the clerk to post notice of it, but that was not regarded as essential to its validity.   The court said : ``The time and place of holding it may always be ascertained by examining the clerk's records ; and an objection that notice was not duly posted should never be allowed to prevail.   The foundation of the meeting is the order of the previous annual meeting, not the posting notice of the clerk ; the former is indispensable, but not the

latter.'' So, in the case at bar, the place of sale of land by a sheriff under execution at law, may always be ascertained by reference to the statute. This gives the legal notice of the place of sale and not the advertisement by the sheriff, the former is indispensable, but not the latter.

The case of Howe v. Starkweather, 17 Mass. 243, decides that mere irregularity of the officer will not vitiate the sale. ''Purchases (say the court) would not be made, and the interests of both debtor and creditor would suffer, if sales, made by one having lawful authority, and appearing to have exercised it lawfully, should be avoided on account of some irregularity, which could not be known at the time.'' The doctrine of this case was referred to and approved by this court in the case of The President and Selectment of Natchez v. Minor, 10 Smedes & Marsh. 261. In that case, it was decided that the irregularity of the officer in giving notice of the sale could not affect a *bona fide* purchaser at the sale, for the reason that the irregularity could not be known to him at the time of the sale, but this reason does not exist where the sale is made at a place unauthorized by law. The statute points out the place of sale of real estate, and every purchaser at such sale is presumed to know it; for it is a fundamental principle, that ignorance of the law, which every man is presumed to know, does not afford excuse, the maxim being *ignorantia juris quod quisque scire tenetur neminem excusat.* Every man is presumed to be cognizant of the statute law of his state, and to construe it aright, and if any individual should infringe it through ignorance, he must, nevertheless, abide the consequences of his error. It will not be competent to him to aver, in a court of justice, that he has mistaken the law, this being a plea which no court of justice is at liberty to receive. The law is administered upon the principle that every one must be taken conclusively to know it, without proof that he does know it. Broom's Legal Maxims, 249.

It is not so, however, with regard to notices of sale, which are matters *en pais*, and the purchaser may not know

whether the officer gave them or not, and he may safely repose upon the legal presumption that the officer in this respect did his duty. If this were not so, and the purchasers had to depend for title upon the regularity of the advertisement of sale, property would never command its value, and great sacrifice would be the result. No one would buy unless satisfied that proper notices had been given, a fact not likely to be known to many, and perhaps by none of the bystanders at a sheriff's sale, if they were necessary to the validity of the purchase at such sale.

We have arrived at the conclusion that the statute as to the place of sale of land, by a sheriff or other officer, under execution at law, is imperative, and as to giving notices of the sale, it is merely directory. It necessarily results from this view of the law, that the appellant acquired no title to the property in controversy at the sheriff's sale in the town of Summit, and that there is no error in the decree of the court below.

The decree must, therefore, be affirmed.