## ALLOWANCE FOR ALIMONY MAY BE MADE ONLY OUT OF PROPERTY POSSESSED AT THE TIME OF JUDGMENT.

Common Pleas Court of Franklin County.

HELEN E. DOWNING v. LOWELL A. DOWNING; HAZEL A. DOWN-
ING v. WILLIAM H. PRYOR; GRACE PRYOR v. WILLIAM H.
PRYOR; LULU E. WALSH v. PLENNY W. WALSH.

Decided, October Term, 1922.

*Statutory Provisions—Judgment in Lape v. Lape, 28 O. C. A., 108, and
99 O. S., 143, Considered and Applied—Personal Earnings Distin-
guished from "Property."*

1. Divorce and alimony are of exclusive statutory origin and involve
no elements of equitable jurisdiction.

2. The report in the case of *Lape* v. *Lape*, 28 O. C. A., 108, in the
original hearing in the trial shows that the husband had both real
and personal property, thus disclosing that the court had power
under the statute to make an award of alimony out of the hus-
band's property payable in gross or in installments as the court
deemed equitable, as authorized by the Code Sections 11990, 11991.
The records of the appellate and supreme court disclose that the
court of appeals reversed the trial court for error in setting aside
the judgment for alimony, the evidence showing that at the time
of judgment of divorce the husband had property, it appearing,
however, that he had no property when the trial court annulled the
judgment for alimony.

3. It appearing from the appellate court opinion that the husband
possessed property when divorce was granted, and the record of
the supreme court containing no statement of facts, it therefore
appears that the trial court did not by its original judgment make
an allowance of alimony out of the mere future personal earnings
of the husband.

4. In three of the cases under consideration the records do not show
that either of the husbands had property at the time of the
divorce; therefore, the court was without power or jurisdiction to
render judgment for alimony, although it had jurisdiction and
power in two of the cases under the statute (Sec. 11987) to render
judgment for the support of minor children.

5. It, therefore, appears that the opinion expressed in the syllabus
by the two reviewing courts was not based upon the facts pre-
sented by the record of *Lape* v. *Lape*.

6. In statutory proceedings in divorce and alimony, where the statutes furnish the sole guide, and the provisions thereof are plain, simple and unambiguous, it is the duty of the court to follow and apply the statute. Resort may not be had to judicial rules of construing statutes in prescribing the jurisdiction, power and duties of the court, "for the sake of justice," where the statute is expressed in such plain and simple language that it may be readily understood and comprehended by giving the words their ordinary meaning. The fundamental rule of construction is, that where the language of a statute plainly and obviously *restricts* and *limits* the *power of* the court in making an award of alimony to a divorced wife out of her husband's property real and personal, as may seem reasonable at the time of the divorce, such statutory limitation of the power and jurisdiction must be regarded as mandatory.

7. The judgments entered by the appellate and supreme court not being in conflict with the judgment entered by the court in the cases under consideration, the statute furnishing the sole source of power of the trial court, it is the duty of the court to follow the statute by making allowance of alimony *only* out of property owned by the husband at the time of judgment as required by statute.

8. When the evidence shows that the husband has property at the time of judgment of divorce, alimony may then be allowed in property, or in money payable in gross, or in installments, having due regard to the value of the husband's property, real or personal, at the time of the divorce.

9. The term property, used in the statutes, does not contemplate, include, or have reference to earning capacity resulting from work, labor or professional earnings. (*Jackson* v. *Burns*, 116 La. Ann., 695).

KINKEAD, J.

The foregoing cases have been submitted on the motion and demurrer docket. In all three cases a divorce was granted the wife, in each case by reason of the aggression of the husband. An allowance of alimony was made in each case to the wife in a stated sum of money. In the Downing case the petition did not contain a prayer for alimony; the petition sought divorce only, the prayer being for such other relief as may be proper in equity.

Divorce and alimony is exclusively statutory, the court having no power in equity or chancery as these terms are known and understood in common law and equity system.

In the first Pryor case a motion is filed for a modification of the judgment for alimony. On March 10, 1920, Pryor's wife obtained a divorce for the aggression of her husband. There was one child born July 17, 1914. The prayer was for divorce, for temporary and permanent alimony and custody of the child. Judgment of divorce to plaintiff was entered March 12, 1920; custody of the child was awarded to the mother. Judgment was rendered for $40 per month for alimony to the plaintiff and for the support of the child.

Two or more motions have been filed to modify the judgment for alimony, which were overruled. A motion is now again submitted for an order of modification of the judgment. A reduction was made to $3. on May 21, 1922. Proceedings in contempt have been prosecuted in this case for non-payment.

Pryor was married a second time, and divorced a second time, having two children by his second wife. It was adjudged that he pay to his second wife the sum of $40 for alimony and for the support of the two children.

It is shown by affidavit that his present salary is $135, whereas it formerly was $173. The affidavit shows his fixed monthly expenses to be $156.95, leaving him a balance of $17.95 for himself each month. In none of the three cases does it appear that the husband for whose infractions divorce was granted had any property. All that the three ex-husbands had was what they earned.

It is strange that our courts have so long operated under the statutes of divorce and alimony, and the question of power of the court to make an award of permanent alimony in the form of judgment for a lump sum payable in installments, when the divorced husband has no property—real or personal—and such award must necessarily be payable out of future earnings, until it appeared in the reviewing court in the case of *Lape* v. *Lape*, 28 O. C. A., 108, affirmed in *Lape* v. *Lape*, 99 O. S., 143, but upon wholly different grounds.

Justification for an opinion by a trial court after the court of last resort has expressed an opinion may be found in a de-

sire to advance some views of a contrary nature—on the theory that no question may ever be considered to have been decided, until it is decided right, and further because the Supreme Court having affirmed the Court of Appeals, the opinion contained in the official reports is just an opinion, but not precisely on the judgment. Especially may there be warrant for action by a judge of the old common law shop of justice, if it can be made to appear that the statute is the law—when not read out of existence or materially changed by judicial legislation under the guise of judicial construction; for it is the duty of the trial court to follow the statute.

I would prefer taking my statutes "straight," just as they came from the Legislature, rather than to have them mixed with a tincture of judicial construction which removes the obvious legislative meaning and purpose, and substitutes a new judicial remedy in lieu of the one prescribed by the Legislature. I desire not to show special consideration for the errant husbands, especially not more than was manifested by the chief justice for the injured wives, but I think his decision to which reference will directly be made, rather displayed the kind of zeal for the women which would have come more approximately from the Legislature.

After years of litigation under the divorce and alimony statutes there came into the Supreme Court the case of *Lape* v. *Lape*, 99 O. S., 143, on error from Hamilton County Court of Appeals, from whence many good things sometimes come. I think much more of the decision of the Court of Appeals than that of the learned chief justice. In the Lape case reported 28 O. C. A., 108, the court of appeals left the divorce and alimony statutes just as they came from the Legislature, leaving them unaffected by judicial legislation. That court evidently thought they meant what the language indicated, that their meaning was obvious and simple, that "By no stretch of the imagination, nor by any strained construction of the term 'property,' could it be claimed that future personal earnings or future wages come within the meaning of the term 'property' as used in the statute." (Section 11900.)

So this court held that divorced wives could have no alimony when their derelict husbands had no property; but the statutes require that they must have property in order to justify an award of an allowance of alimony in property or in money; that future earnings of the divorced husband do not constitute property possessed by the derelict husbands, which the plain language of the statutes requires, when the court awards alimony.

The divorced wife, Virginia Lape, went to the Supreme Court on error, and one of the finest judges who ever graced that Bench—the first real chief justice—delivered the opinion. He was much wrought up over the great injustice done by the construction placed upon the statute by Brother Hamilton of the appellate court; he dilated to remarkable extent upon the "startling" character thereof, adverting to the alleged "thousands" of erroneous judgments which had been heretofore rendered and enforced—that have worried trial judges who have wrongfully imprisoned some of the husbands.

Time and space will not permit the recital of all the direful things enumerated in the opinion of the chief justice.

When the supreme court took the Lape case in hand, believing that the appellate court interpretation did great injustice to the divorced women and mothers—if the statute really meant what it stated, that alimony can only be allowed out of property real or personal owned at the time of the divorce—the court of last resort—opened the "Book of Judicial Remedies" and found a familiar rule of judicial construction by virtue of which statutory provisions may be correctly diagnosed as either directory or mandatory, and applied the rule of construction applicable to laws classed as directory, and thereby read out the intent of the Legislature, and read into the statute something which under no possible grammatical construction could have been deduced from its plain simple words.

Such plain and simple statutes as Section 11990 appeared to be, a statute in which the legislative intent is expressed in such ordinary, plain, simple language, that one possessing ordinary

good sense and judgment, and with some legal knowledge and experience ought readily understand and comprehend its meaning. It seems unfortunate that the judicial view was not centered on the judicial conception adopted some years ago by Judge Spear and his associates—reference to which is made later. No one would expect the best results, if the judicial mind became disturbed about the numerous errors of the past, or by the alleged shortcomings of the Legislature in its form of expression. If the judicial mind had but cast out these devils of worriment about the matrimonial disasters, it would not seem difficult to understand that the statute meant what its language expresses, that permanent alimony can only be allowed out of property owned by the husband at the time of judgment.

It is only necessary to keep in mind the ordinary plain and simple language of the statute, and apply the appropriate tests by which laws are classified as directory and mandatory.

Section 11990 provides that:

"When a divorce is granted (for)   *   *   *   the husband's agression   *   *   *   the   court   *shall*   restore   *   *   *   her   *   *   *   name   *   *   *   *and* allow *such* alimony, out of her husband's property as seems reasonable, having due regard to   *   *   *   the value of the property real and personal *at the time of the divorce.*

When the judicial mind is not consumed by alleged wrongs to the divorced wife because the sinning husband has no property, there should not be the least trouble in understanding such a plain provision.

If the Legislature had thought it proper to authorize the court to award alimony regardless of ownership of property; if it had considered it advisable to compel the derelict husband to pay regardless of ownership of property, it is more rational to assume that it would have so specifically provided, rather than to use words of limitation. It must be assumed that the Legislature knew what property meant, and that the word was used advisedly.

The term "property" includes everything of value, tangible

and intangible, capable of being the subject of individual right or ownership. *Bank* v. *City*, 136 Iowa, 208. It includes money. *Fishburn* v. *Loudershausen*, 50 Ore. 363, 15 Ann. Cas., 975.

While the right to labor or to practice a profession may be considered a property right for the purpose of protection, services already rendered by one person for another are not "property," for the purpose of enlarging or changing the ordinary remedies by which the indebtedness therefor may be recovered. *Gleason* v. *Thaw*, 185 Fed., 345, 347; 107 C. C. A., 463; 34 L. R. A. N. S., 894.

Earnings due for past services of course are not "future earnings."

Property is everything that has exchangeable value. *Sailors, etc.* v. *Lumber Co.*, 156 Fed., 450, 454, 85 C. C. A., 16.

In *Jackson* v. *Burns*, 116 La., 695, 41 So., 40, it is held that alimony can be allowed to the wife when divorce is obtained under the Civ. Code Art. 160, only from property, and the word "property" does not mean earning capacity.

"Property" is a general term, used to designate the right of ownership. *Pell* v. *Ball*, Spears Eq. (S. C.), 48, 83.

A claim for alimony made in a suit for divorce is not property; it is merely an allowance out of the estate of the husband for the maintenance of the wife after dissolution of the marriage relation. *In re LeClaire*, 124 Fed., 654, 657. An expectation of acquiring property, or of earning wages, does not constitute property. *In re Wetmore*, 108 Fed., 520: 47 C. C. A., 477.

An employee's right to work is not property. *In re McCabe*, 29 Mont., 28.

In *Jackson* v. *Burns*, 116 La. Ann., 695, (cited above) the statute is similar to our own. It reads:

"If the wife, who has obtained the divorce, has not sufficient means for her maintenance, the court may allow her, in its discretion, *out of the property* of her husband, alimony, which shall not exceed one third of his income."

The court held the word "income" referred to a revenue derived from some other source than the labor of the recipient.

The statute provides that the award for alimony shall be re-
vokable in case of her remarriage. "The word 'property' the
court stated in the syllabus, does not mean earning capacity, nor
does the word 'income' mean current earnings, resulting from
labor."

I direct attention to two valuable and remarkably significant
references made by the author of the opinion in the Lape case,
where the Chief Justice and the court by a process of construc-
tion, took out the vital parts of the statutes and put in some-
thing else; they read into the statute the syllabus found in the
*Lape* v. *Lape,* 99 O. S., 143. The language of the statute is so
plain that one who runs may readily perceive the purpose to
*limit the power* of the court to make the award of alimony out
of the property of the husband.

It will be interesting and useful to advert to comments on the
use of judicial precedents.

Justice Nichols in the opinion in *Youngstown* v. *Fischel,* 89
O. S., 247, 252, touching the use of precedents made the follow-
ing pertinent observation, which applies with great force to his
opinion in *Lape* v. *Lape,* in which some of the essential elements
were read out of a statute in order to carry into it a power which
its terms do not warrant, made the following wholesome state-
ment touching precedents:

"*The doctrine of precedents owes its origin and observance
to a recognition of the necessity for stability and uniformity in
the construction and interpretation of the law,* and no argument
is necessary to support the view that the administration of jus-
tice calls for well-settled rules in such matters; but, as observed
by Bartley, C. J., in the case of *Leavitt & Lee, Exrs.,* v. *Mor-
row,* 6 Ohio St., 78: '*Precedents are to be regarded as the great
storehouse of experience; not always to be followed, but to be
looked to as beacon lights in the progress of judicial investigation,
which, although at times, they may be liable to conduct us to
the paths of error,* yet, may be important aids in lighting our
footsteps in the road to truth.'

"And where the original decision has been rendered by a di-
vided court, and the question involved is not strictly one re-
lating to property title, and there exists grave question as to

the logic or equity of such established rule, the court can not stand bound and fettered, helpless to remedy an injustice if one exists. For, as observed by the same learned judge in the Leavitt case, *supra*, '*Mere precedent alone is not sufficient to settle and establish forever, a legal principle. Infallibility is to be conceded to no human tribunal.* A legal principle, to be well settled, must be founded on sound reason, and tend to the purposes of justice.' The court in the Leavitt case set aside a rule of law which has been recognized and followed for over two centuries.''

The purpose of adverting to this citation is to acquiesce therein, and to appeal to reason by insisting that precedents enunciative of the rule of construing directory, and mandatory statutes should not be wrongfully applied as they obviously were in the Lape case.

One of the most appropriate discussions found touching judicial expositions of the alleged declaratory character of a statute in order to embody into a law, as was done in the Lape case, for an alleged purpose of preventing consequences to divorcees in the state is found in *Koch* v. *Bridges,* 45 Miss., 247, or 22 Miss. Rep. Ann., Ed., 245:

''This mode of getting rid of a statutory provision by calling it directory is not only unsatisfactory, on account of the vagueness of the rule itself, but it is the exercise of a dispensing power by the courts which approaches so near legislative discretion that it ought to be resorted to with reluctance, only in extraordinary cases, where great public mischief would otherwise ensue, or important private interests demand the application of the rule. There is no more propriety in dispensing with one positive requirement than another; a whole statute may be thus dispensed with when in the way of the caprice or will of a judge. And besides, it vests a discretionary power in the ministerial officers of the law which is dangerous to private rights; and the public inconvenience, occasioned by the want of uniformity in the mode of exercising a power, is a strong reason for bridling this discretion. It is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive, the courts are not called upon to give reasons why it was enacted. A judge. should rarely take upon himself to say that what the Legislature has required is unnecessary. He may not see the necessity of it,

still it is not safe to assume that the Legislature did not have a reason for it; perhaps it only aimed at certainty and uniformity. In that case, the judge can not interfere to defeat that object however puerile it may appear. It is admitted that there are cases where the requirements may be deemed directory. But it may be safely affirmed that it can never be where the act, or the omission of it, can, by any possibility work advantage or injury, however slight, to any one affected by it. In such case, the requirement of the statute can never be dispensed with.

"The Legislative body is the supreme power of the state, and, whenever it acts within the pale of its constitutional authority, the judiciary is bound by it, and it is not competent to the latter tribunal to dispense with a regulation or requisition plainly prescribed by the former, or, to say that this mode, that or the other, is as good as the one dictated by the Legislature for this, in fact, would by placing the judiciary above the Legislature, by enabling the former to nullify the acts of the latter, or to supersede them by substitutes to which the Legislature might not have assented had the proposition been submitted to it. The intention of the Legislature should control, absolutely, the action of the judiciary. Where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to the wisdom or justice of the particular enactment. No principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the Legislature shall be intended to mean that they have plainly expressed, and consequently, no room is left for construction. And courts should adhere to the cardinal rule, that the judicial functions are always best discharged by an honest and earnest desire to ascertain and carry into effect the intention of the law-making body."

One who has dealt with divorce and alimony statutes for years becomes familiar with the difficulties, trials and tribulations—the trial judge having abundant opportunity to observe the system as it operates.

I heartily agree with the wisdom and learning contained in the foregoing quotations, and will regard precedents as "the storehouse of experience," but not a full and perfect one; "not always to be followed," especially when by application of a rule

of statutory construction, a court eliminates plain and simple provisions of a statute, taking out of it, the very power and jurisdiction which it confers upon the court.

I will agree that "mere precedent alone is not sufficient to settle and establish    *    *    *    a legal construction of a statute."

The fundamental rule for construing a statute which prescribes the jurisdiction of the Common Pleas Court in making an award of alimony to the divorced wife, imperatively is that it shall be made out of the property owned by the derelict husband at the time of the entry of the judgment granting divorce and awarding alimony.

The language of Section 11990 plainly and unequivocally prescribes the jurisdiction and power of the court to make an award of alimony only out of the property owned and possessed by the husband at the time of judgment, or as the statute reads "at the time of divorce." And no court has the power to read such plain and mandatory language out of the statute, and substitute other language of wholly different import and meaning.

It is dangerous to attempt to be wiser than the policy of a statute enacted by the constitutional legislative branch of government, and to read into it something not intended to be there under the guise of a rule of construction. The power of the Legislature is supreme in establishing a legislative policy, especially when it has express relation to the power and jurisdiction of a court.

Careful and conscientious duty requires the judiciary to stay its hand, and compels the court to refrain from transgressing legislative power. The doctrine of the Old Roman in *Admx. of Tracey* v. *Admrs. of Card*, 2 O. S., 431, quoted by the chief justice in *Lape* v. *Lape*, plainly states that,

"The judiciary should be careful not to make its office of expounding statutes *a cloak for the exercise of legislative power.*"

With due respect to higher judicial authority, it must nevertheless be stated that this principle so well expressed is precisely what the court did in expressing its judicial opinion in the

Lape decision, which, as stated in *Youngstown* v. *Fishel, supra,* is something that "mere precedent is not sufficient to settle and establish." "It is dangerous to attempt to be wiser than the law [statutory law] when its requirements are plain and positive."

Furthermore the rule of construction, when determining whether statutory provisions are directory or mandatory, is, that when the same has relation to *the power of an officer,* and *more especially when it has specific reference to the power and jurisdiction* of a common law court, the jurisdiction of which is supplemented by statutory enactment, and the statutory provision in such case has relation to *power and jurisdiction,* which is in the *interest of the public,* and has relation also to the *public policy* of the state, and to the due and orderly administration of justice—in such case we claim it is *imperative* upon the judiciary to conclude and declare that such statutes are mandatory.

In such case the manifest duty is to declare and enforce the statute according to its plain provisions. Courts have no power "to extend the enacting words beyond their natural import and effect, in order to include cases within mischiefs" or "remedied rights" which are not clearly expressed merely upon the ground that the judiciary is of the opinion that other supposed mischiefs ought to be taken in account—which the statute, if mandatory, would not take into consideration. This is the whole burden of the argument of the opinion in the Lape decision. 99 O. S., 149. Whether the "mischiefs" recited by the Chief Justice would arise if the statute be considered mandatory, thus excluding alimony out of future earnings, is a matter about which minds might differ. The Legislature thought differently. Trial judges who have long dealt with domestic difficulties have an opportunity to learn and know of many problems which one without this actual experience might not appreciate. My curiosity is aroused as this opinion is written concerning the experience of the limited number of judges of domestic relations courts, and their views touching such problems.

I want to look into the books further touching the question of directory and mandatory laws; the old Masters—Cooley and

others—treat the subject meagerly, while Throckmorton's Article in Ruling Case Law is silent. Naturally when it is asserted that the court of last resort has erred in the interpretation of the statute, the claim ought to be well supported.

Ranney, J., in *Sheldon v. Newton,* 3 O. S., 494, held that:

"The *power to hear and determine* a cause is jurisdiction. * * * But before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint; * * * that such complaint has * * * been preferred; that such person or thing has properly been brought before the tribunal."

So Lape, the wife appears, files the petition for divorce and alimony, and the husband appears in court.

And Ranney, J., further says:

"When these appear, the jurisdiction has attached, the right to hear and determine is perfect; and the decision of every question thereafter arising *is but the exercise of the jurisdiction* thus conferred."

Thereafter when Lape the husband answered and the wife replied, the trial was had, and the evidence disclosed that the husband had some property; the court of appeals opinion so states. The court thereupon concluded that the wife was entitled to the divorce, granted it. Section 11990 of the Code requiring the court to grant alimony *"out of her husband's property as it deems reasonable, having regard to * * * the value of his real and personal estate at the time of the divorce,"* the Insolvency Court properly made the award of monthly payments based on property, which the Circuit and Supreme Courts properly decided that the trial court erroneously vacated it. So as before stated the two reviewing courts discussed a moot question.

Power and jurisdiction is of the very essence of the whole proceeding in court. It is not part of the common law jurisdiction, but it is special and statutory, and jurisdictional. Therefore is it not error to assert that by the application of a mere rule of statutory construction the court through the medium of a "paraphrase" in the language of the Mississippi Judge in

*Koch* v. *Bridges, supra,* can adopt "this mode of getting rid of a statutory provision by calling it directory" when as matter of fact it is "but the exercise of a dispensing power by the courts, which approaches [the] legislative discretion."

Judge Cooley, however, expressed the true doctrine when he states that:

"Those directions which are *not of the essence of the thing* to be done, but which are given with a view merely of the proper orderly, and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act be performed, but not in the * * * precise mode indicated, it may still lie sufficient, if that which is done accomplishes the substantial purpose of the statute. But this rule presupposes that *no negative words are employed in the statute which expressly or by necessary implication forbid the doing of the act * * ** in any manner than as directed; for it is not to be denied that the courts have sometimes in their anxiety * * * gone very far in *substituting a judicial view* of what was essential for that declared by the Legislature." Conley Court Law, 2d p. 77-8: *Briggs* v. *Georgia,* 15 Vt., 72.

Cooley cites the case of *Miller* v. *State,* 3 O. S., 483 (Thurman, J.) in which he states: "By the mode I do not mean the authority in which the law-making power resides." And *authority* and *jurisdiction* are synonomous, when used in respect to statutes which have relation to statutory proceedings such as are carried on in courts for the redress of rights and duties of parties litigant, such as divorce and alimony. Mr. Justice Sharswood stated:

"When the words are affirmative, and relate to the manner in which *power* or *jurisdiction* vested in a public officer or body is to be exercised, *and not to the limits of the power or jurisdiction,* they may and often have been construed directory." *Bladen* v. *Phila.,* 60 Pa. St., 446; *Spencers Appeal,* 78 Conn., 301; *Nixon* v. *Grace,* 98 Ark., 505.

Negative words in a grant of power are never construed as merely directory. *State* v. *Thompson,* 21 No. Dak., 426. "Statutes which confer upon a public body or officer power to act

*for the sake of justice,* or which clothe a public body with power to perform acts which concern the public interests, or the rights of individuals, although the language is permissive merely, will be construed as imposing *duties* rather than conferring privileges, and will therefore be regarded as mandatory.'' 36 Cyc. 1159. *State* v. *Barry,* 14 N. D., 316; 17 Ala. 527; 39 N. J. L. 620; *State* v. *Franklin County,* 35 O. S., 458.

If the thing required to be done relates to *matters of substance* the provision is mandatory. *People* v. *Butler,* 20 Cal. App., 379. Whenever the language contains a *grant of power,* it was intended as a mandate. *McCreary* v. *Speer,* 156 Ky., 783; *Varney* v. *Justice,* 86 Ky., 600.

The divorce and alimony statutes contains a *grant of power* upon a court which are designed to confer the *jurisdiction* to hear and determine the rights of the parties to obtain a divorce, and also to obtain a judgment for alimony, when the evidence warrants it. The provisions are such that when the wife has produced evidence sufficient to authorize the court to grant a divorce by reason of the aggression of the husband, justice and the mandatory provisions of the statutes makes it imperative to grant the divorce. When the wife asks for alimony as well as divorce, it is equally imperative that she establish by evidence that the derelict husband *has property out of which such alimony may be allowed;* the language of the statute construed by the established rules of construction authorizes, empowers the court to award judgment *only out of her husband's property.* The words of the statute are *negative,* they prescribe the *limits of the power* to award such alimony and authorize and confer jurisdiction upon the court, which is to be regarded as limited power and authority to enter judgment for such alimony *out of her husband's property* real and personal, possessed and owned by him at *the time of the divorce.* Section 11991 authorizes the court to ''allow out of her husband's property,'' either in ''real or personal property or both, or by decreeing to her such sum of money, payable in gross or installments, as the court deems equitable.''

When the husband has personal or real property, the court

may require the husband to make an equitable award by permitting him to keep the real property, and to require him to pay such sum of money either in gross or in installments, as the court may deem to be an equitable award out of his property. Such an award involves the public policy and consideration of equity contemplated in *Fickel* v. *Granger*, 83 O. S., 101. It is well understood that proceedings in alimony do not invoke the equitable jurisdiction as that term is known in law. *Marleau* v. *Marleau*, 95 O. S., 163.

The best conception of the nature of alimony is found in *Cook* v. *Cook*, 66 O. S., 566, where it is described as of the nature of a partition, although Sec. 11993 authorizes a division of property between them even though the divorce be granted by reason of the wife's aggression. Judge Spear in the case of Cook states that the law wisely gives the wife "a just and equitable proportion of the whole," observing that "this allowance may be made either in real or personal property or both, or in money, payable in gross, or in installments, as to the court may seem reasonable." He states that: "The court (allows the alimony) *as a part of the estate standing in his name in which she has a right to share,* fixed by the court in its discretion and thus appropriated to her, and to which she thereupon becomes legally entitled."

It would have been well for the court to have considered this concept of alimony, so accurately stated.

It is also essential that Bench and Bar keep this decision and opinion of Judge Spear in mind, in order that we may hold fast to the moorings of the law on this subject. It was in this case *Cox* v. *Cox, supra,* that the doctrine was laid down that the court may enforce judgments for alimony by proceedings in contempt. It is imperative to keep this decision in mind, which was to the effect that only in such cases, where alimony is legally awarded according to the statute, and the legal conception set forth therein, that there may be legal warrant for prosecution of proceedings in contempt by way of enforcing the judgment.

It is only where judgments for alimony have been rendered and the evidence discloses that the derelict husbands have prop-

erty that the court may award a judgment for money. Therefore in none of these cases or others under like conditions may proceedings in contempt be legally prosecuted.

A judge has no power to punish a husband for contempt for failure to pay alimony where the judgment therefor is rendered errnoneously and without jurisdiction; where the husband has no property and the award is made in anticipation of future earnings. A judge who assesses a penalty by imprisonment for alleged contempt for failure to pay such alimony so awarded without jurisdiction becomes personally liable for wrongfully causing an imprisonment.

While dealing with this general subject it seems proper to make observation concerning the jurisdiction and power of the court to make an award in proceedings for divorce and alimony for support and maintenance of children.

Section 11987 provides that: "The court shall make such order for the disposition, care and maintenance of the children, if any, as is just." Under this provision the court is vested with power to compel the husband to furnish money sufficient to maintain the minor children.

Whether this provision is directory or mandatory is questionable. The rule of construction permits the court to translate the word to mean "may," under certain conditions according to the language used. The troublesome question arises whether the provision is directory or mandatory. The use of the words "if any" rather indicates that it may be considered directory rather than mandatory. Under the rules of construction the word "shall" may be construed to mean "may" if the whole context so indicates. The use of the words "if any" seems to indicate that it is directory, leaving it optional with the court to make an order for such disposition or not. This has reference to both care and custody, as well as for maintenance. If the provision be regarded as directory, the court may decline to make such an order for either the care or maintenance, which would leave the way open for proceedings in the Juvenile Court where the suprvision of the care and maintenance might be more efficiently taken care of.

If that be the correct view, proceedings might be had in the Juvenile Court which, with its powers and equipment is more efficient in the administration of the care and maintenance of minor children.

If the statute be directory and not mandatory, as it seems to be, the court may then refrain from either awarding the custody or from making provision for the care and maintenance. The Juvenile Court having the machinery with which to make investigations concerning the surroundings of the parents and their ability to care for the children, it is in a better position to carry out the purpose and plan of the statutes, as well as to enforce them. It may enforce the orders of the court by imprisonment. And in extreme cases this court through its officers may when deemed advisable bring extreme cases to the attention to the prosecuting attorney.

The order in *Downing* v. *Downing* is that the judgment for $500 payable $5 per week for alimony is vacated and annulled.

The order in *Hazel Proyor* v. *Wm. H. Pryor* will be that the former judgment for $40 per month for alimony will be set aside and annulled *in toto*. The custody of the child may remain with the mother and the father is adjudged to pay to the mother the sum of $15 per month for the support of the child.

**In the** case of *Grace Pryor* v. *Wm. H. Pryor* an order was made that defendant pay for the support of the two children, two and three years old respectively, the sum of $40 per month.

The order of the court now is that defendant shall pay to the plaintiff Grace Pryor the sum of $25 per month for the support and maintenance of the children.

No part of these allowances is for alimony, the defendants having nothing but their personal earnings, except in the Walsh case.

If the parties in interest deem it best so to do, the court may merely vacate each and all of the judgments and orders, and leave the way open to bring the cases to the attention of the Juvenile Court.

In the case of *Walsh* v. *Walsh* a motion is submitted for the issuance of a rule in contempt for non-payment of alimony. On

November 2, 1921 judgment of divorce was entered in favor of
the plaintiff for the aggression of the husband, and an award
of $400 alimony was allowed plaintiff the same to be paid in
weekly installments of five dollars.

The evidence shows that the husband had no property, but
that he borrowed some from his wife with which he purchased
furniture which he owned at the time of divorce. The sum
awarded as alimony represented this amount, and was based
on the furniture which he owned.