HUDSON et al. vs. JEFFERSON COUNTY COURT.

SUPREME COURT: *Jurisdiction of, to issue writs of* certiorari.

The supreme court, by the constitution, in the exercise of a general superintending control over inferior courts, have power to issue writs of *certiorari*, as an exercise of original jurisdiction.

COUNTY COURTS: *Appeal from, by whom lies.*

In allowing or disallowing a demand against the county, an appeal lies only by the party interested and not by citizens who are not interested.

LEGISLATIVE ENACTMENTS: *Authority given by, must be strictly followed.*
  Where the legislature points out, specifically, how an act is to be done,
    although without it, the court or officer, under their general powers,
    would have been able to perform the act, yet, if the legislature
    impose special limitations, they must be strictly pursued, and
    although performed by a discretionary officer, the limitations of
    the statute render the doing of the act ministerial in him perform-
    ing it, in which no discretion can be indulged.

PETITION for *Certiorari.*
*Harrison & Jones, Williams* and *Compton,* for petitioners.
*Yonley & Griffin* and *Martin,* for defendant.

STEPHENSON, J.   The writ issued in this case has brought
the record of the county court of Jefferson, relative to the levy
of taxes for 1872, before us for review.

The plaintiffs allege the illegality of that item of the levy,
imposing a tax of three mills on the dollar to pay certain
bonds issued to one Twombly in payment for a farm pur-
chased by the county, pursuant to an act of the general
assembly, approved July 16, 1868, entitled "An act to pro-
vide for the establishment of a house of correction in the
several counties of this state."   The grounds of illegality,
urged by plaintiffs, are that the proceedings and orders of the
county court !relating to the purchase of the farm, the issue
of the bonds and the levy of the tax are void, because the
court, by reason of the irregularity of its proceedings, acquired
no jurisdiction of the subject matter.

The defendants moved to quash the writ because :

*First.*   This court has no jurisdiction to issue, hear and
determine said writ in this cause.

*Second.*   Because the plaintiffs have a full and ample
remedy by appeal.

*Third.*   That the circuit court has the sole and exclusive
jurisdiction to supervise and control the judgments and

orders of the county county court, and this court can have none until there has been an application to and refusal to act, by said court.

The assignment of causes for quashal are untenable; the first and third are fully decided by the case of *Price & Barton v. Page*, 25 Ark., 527; and the second by the case of *Chicot County v. Tilghman*, 26 Ark., 461. The county court, as it existed at the time the proceedings were had, was one of special and limited jurisdiction. The constitution of 1836 prescribed that they should have jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. County courts remained at the time this order was made, with the jurisdiction they possessed under the constitution of 1836.

This power, however, they cannot exercise without legislative action. *Pulaski Co. v. Irvin*, 4 Ark., 473. The county court had no inherent power to purchase the farm, and provide for payment therefor by taxation. That power they derived from the act of the legislature, and as to the mode to be pursued, if the statute points it out, that alone must be followed.

If the legislature had simply provided for the purchase and erection of the building, leaving all the details to the discretion of the court, its constitutional powers would have been ample to carry the act into effect, but as the act prescribes specifically how the purchase is to be made, it must be followed by the court. The assent of a majority of the people of the county must be had in a particular manner. If the court, after the determination of this preliminary question, decide to make the purchase, they are required to do so through the report of three commissioners; and the erection of buildings is to be let out, in a particular manner, to the

lowest bidder.    The legislature leave the question of payment to the court, to be made as "other county improvements" are paid for.

It is the general rule that when the legislature points out specifically how an act is to be done, although without it the court or officer, under their general powers, would have been able to perform the act, yet if the legislature impose special limitations, they must be strictly pursued, and although performed by a discretionary officer, yet the limitations of the statute render the doing of the act ministerial in him performing it, in which no discretion can be indulged.

With this general view of the principles bearing upon the question, we will proceed to the examination of the record and apply the rule, as we have deduced it, to the acts of the court.

The first record entry contains a copy of the petition of the citizens of Jefferson county, asking the county court for the purchase of the farm, and the erection thereon of a house of correction.    It is clear from the reading of the petition, that the signers thereof were attempting to avail themselves of, and follow the act of the legislature, approved July 16, 1868, to provide for the establishment of a house of correction in the several counties in this state.    The first section of the act referred to reads as follows: " Be it enacted, etc., that the county courts of the several counties in this state, shall purchase a farm or tract of land within the boundaries of the county, and provide for the erection on such farm or tract of land of a house of correction : *provided*, that such farm or tract of land shall not be purchased unless the tax payers of each township in the county shall petition the county court to provide for such purchase ; and *provided further*, that no such farm shall be purchased unless a majority of all the tax payers of the county shall sign such petitions."    The court proceed at

great length, in their order approving said petition, to set out the act and its purposes, and find that the petition complies in all respects with the requirements of the law; and after approving the petition, appoint the commissioners to purchase the farm.

The law requires two things: First, that the tax payers in each township shall petition for the purchase; second, that a majority of all the tax payers of the county shall petition. These two things must affirmatively appear from the record to have been done. The court say, "said petition complies with the provisions of said act, and is signed by a majority of the tax payers of said county of Jefferson."

From the form of the petition and the recitation of the statute by both the petitioners and the court, it is evident to our minds if no other rule governed, that the requirements of the statute have not been complied with. It is true that the question of fact as to whether a majority of the tax payers of the county signed the petition is with the court, and the affirmative averment of the record is conclusive in a case like this; yet, that petitions were circulated and signed in each township does not appear; neither is there any such allegation in the record. The statement in the record that the petition conforms to the formal requirements of the statute is untrue. If the statute had been as the court and the petitioners have set it out in the petition and order, the record would have been correct; but both the court and tax payers seem to have fallen into an error as to what the law was, for they entirely overlook the first proviso of the section above quoted.

The legislature evidently intended there should be as many petitions circulated as there were townships in the county, and that said petitions should, in the aggregate, contain the names of a majority of the tax payers of the county. At least a substantial compliance with both provisos is imperative.

If the record showed that the petition in its present form was circulated in each township in the county, and that it contained the signatures of a majority of the tax payers of the county, we think it would have complied substantially with the statute; but there has been a total ignoring of one of its important and formal requirements. The purchase of the farm and the erection of the house of correction are predicated upon the consent of the tax payers of the county, to be obtained in a particular manner pointed out by law. If this is wanting, the action of the court in making the purchase is *coram non judice*, and if the purchase was void, the levy of the tax to pay the purchase money is also void. But the levy complained of is void for another reason: From the record it appears the county court levied two and one-half mills on the dollar "for the erection and repair of public buildings." This is the maximum allowed by the law under which the tax was laid, which could be levied for that purpose; yet we find another item of three mills on the dollar "for the payment of bonds for county farm."

This latter item would be unintelligible, unless we look further into the record. It appears that the commissioners appointed by the court to purchase the farm, negotiated with Twombly for a certain tract of land. Twombly offered to take twenty-five thousand dollars in "county scrip" or eighteen thousand dollars in county bonds, one-half of the latter to be paid in 1873, and the balance in 1874. The court agreed to pay in bonds, and it is to pay these that the tax is levied.

We are at a loss to know where the court got their authority for issuing these bonds. The law, unless in certain cases where the legislature have specially provided, knows but one method of paying debts contracted by county courts, that is, in warrants of the county treasurer, commonly known as county scrip, said warrants to be paid out of the particular

fund against which they are drawn.  The purchase of the farm and the building of the house of correction might, we think, be brought under the fund for the erection and repair of public buildings, for which the law allows a tax to be levied of two and one-half mills on the dollar, and if the purchase had been otherwise in conformity to law, we see no reason why the court could not have paid for it out of that fund. But the issue of bonds by the court for that purpose, without legislative authority, was clearly illegal.  Indeed, if it were otherwise, we do not see why the court could not successfully evade the very salutary restriction of the act of March 28, 1871, which prohibits county courts from levying a greater amount of taxes in any one year than is there specifically authorized.  If, under their general powers for disbursing money for county purposes, they may issue bonds and raise sufficient money by taxation for their payment, for one purpose, unauthorized by law, they may for any and all purposes; and, when they find the limitations of the act above referred to too narrow for the full exercise of their ambition, they may evade them by the issue of bonds.  Such proceeding, we conclude, is not within the scope of their power, and the wholesomeness of the law, enacted by the legislature in 1871, will be most clearly illustrated by confining the county courts of the state to what that body considered a just and proper restraint upon them in the exercise of their taxing power.

For these reasons, the levy of the three mill tax by the court to pay the bonds issued in payment for the county farm will be quashed.