[Civil No. 968.    Filed March 22, 1907.]

[90 Pac. 438.]

CHARLES L. KINSLEY et al., Defendants and Appellants,
v. NEW VULTURE MINING COMPANY, Plaintiff and
Appellee.

1. APPEAL AND ERROR—ABSTRACT OF RECORD—INCORPORATING EVIDENCE
—REVIEW—SCOPE—SUPREME COURT RULE 7.—An assignment that
the court improperly admitted in evidence a certain affidavit may
not be considered under rule No. 7, *supra,* where the affidavit is not
incorporated in the abstract.

2. MINES AND MINERALS—PUBLIC MINERAL LAND—ABANDONMENT—AS-
SESSMENT WORK—KEEPER—WHEN TREATED AS WORK.—Where the
question of the necessity for a keeper upon certain mining prop-
erties for a certain year was fairly presented to the trial court for
decision by the evidence in the case, his determination that a keeper
was necessary for the property, and that he was maintained in good
faith, the court's determination of this question is conclusive upon
appeal.

3. COSTS—COST BILL—TIME FOR FILING—JUDGMENT—DATE OF—REV.
STATS. ARIZ. 1901, PAR. 1557, CONSTRUED.—Paragraph 1557, *supra,*
provides that the party in whose favor judgment is rendered, and
who claims costs, shall file a statement of his costs within ten days
next after judgment. *Held,* that a cost bill filed within ten days
from the time when it was ordered and entered on the minutes was
not filed within ten days after judgment, the date of judgment being
the date of ordering, and not the date of signing by the judge, es-
pecially in view of the fact that our statutes do not require that the
judgment of the court shall be signed by the judge.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for the County of Maricopa. Edward Kent, Judge.   Modified and affirmed.

The facts are stated in the opinion.

*A. C. Baker,* and *Robert E. Morrison,* for Appellants.

Some of the authorities go to the extent of allowing as assessment work the salary of the caretaker, but under certain conditions.  See *Hough* v. *Hunt,* 138 Cal. 142, 94 Am. St. Rep. 17, 70 Pac. 1059.  The law exacts a faithful compliance with its terms in reference to doing annual assessment work. The conditions imposed by the act of Congress are wise and salutary, and are by no means onerous.  It is the duty of the courts to hold the locators of mining claims to a strict compliance of the conditions upon which they hold the mine. *Russell* v. *Brosseau,* 65 Cal. 605, 4 Pac. 643; 1 Snyder on Mines, par. 544.   The intent and purpose of the law is to require every person who asserts an exclusive right to a mine by discovery or claim to expend $100 worth of work annually on it, as evidence of his good faith.   *Chambers* v. *Harrington,* 111 U. S. 350, 4 Sup. Ct. 428, 28 L. Ed. 452.   When the salary of a caretaker may or may not be counted as annual labor is discussed in the following cases: *Altoona Q. M. Co.* v. *Integral Q. M. Co.,* 114 Cal. 100, 45 Pac. 1047; *Lockhart* v. *Rollin,* 2 Idaho, 503 (540), 21 Pac. 413.  A party seeking to initiate a claim to mining premises already legally located has the burden of proving by clear and convincing evidence that the annual labor thereon has not been performed, in order to establish that the ground so located is subject to location. But, however, when he shows that the required work has not been done within the boundaries of the claim, he makes out a *prima facie* case.   Then if a claimant relies on labor done outside of the claim, or relies upon the doctrine of what is commonly known as "group work," the burden is cast upon him to prove the performance of such labor and that its reasonable tendency is to benefit all of the claims.  *Hall* v. *Kearny,* 18 Colo. 505, 33 Pac. 373; *Sherlock* v. *Leighton,* 9 Wyo. 297, 63 Pac. 580, 63 Pac. 934; *Justice Min. Co.* v. *Barkley,* 82 Fed. 554.

Hereford & Hazzard, and J. M. Jamison, for Appellee.

All the authorities, so far as we have been able to find, recognize the rule of law that "Where mining works are idle, ·time and labor of a watchman and custodian expended on the property in taking care of it is labor done on the claim." *Lockhart* v. *Rollins,* 2 Idaho, 503 (540), 21 Pac. 413. "The expense of keeping a watchman and custodian in charge of a mine that is not being worked may be properly charged as an item of annual expenditure." *Tripp* v. *Dunphy,* 28 L. D. 14. We have been unable to find that any court has questioned this rule, or attempted to materially modify it, but many have affirmed it. See Lindley on Mines, par. 629; *Altoona Q. M. Co.* v. *Integral Q. M. Co.,* 114 Cal. 100, 45 Pac. 1047. Even though conceding that the value of the improvements was questionable, and that the expenditures of the plaintiff in preserving and protecting them was money poorly expended, it is a well-recognized doctrine that "the object of the law requiring annual assessment work is that the holder of a mining claim shall give substantial evidence of his good faith." Lindley on Mines, par. 629. It is an equally well-recognized doctrine that the annual assessment work required by the statutes of the United States "is too small to be of any particular consequence in the development of a claim. Congress plainly required that work be done by way of a continual, annual assertion, the renewal of the original claim and location, and nothing more." *Mt. Diablo M. & M. Co.* v. *Callison,* 5 Saw. 439, Fed. Cas. No. 9886. "A court will not attempt to substantiate its own judgment as to the wisdom and expediency of the method employed for developing the claims in place of the owner." Lindley on Mines, par. 629. "The courts go so far as to sustain assessment work where the proof shows that $100 was in good faith paid for doing that work, even if the price of the work done was exorbitant." *Wright* v. *Killian,* 132 Cal. 56, 64 Pac. 98; *Quimby* v. *Boyd,* 8 Colo. 194, 6 Pac. 462. Again, the fact that plaintiff maintained and kept a watchman upon the premises was, in itself, sufficient to prevent the location of the property, for "the presence of a watchman upon a mining claim shows actual possession, even of unimproved property." *Justice M. & M. Co.* v. *Barkley,* 82 Fed. 561.

SLOAN, J.—The New Vulture Mining Company, an Arizona corporation, brought suit against Charles L. Kinsley and George E. Sanders in the court below to quiet its title to a group of nineteen mining claims situate in Maricopa county, and known as the "Vulture Group." The defendant Sanders filed an answer disclaiming any interest in and to the property. The defendant Kinsley answered the complaint in which he set up that by reason of relocations made by him about the 31st of May, 1904, he became the owner of the mining ground described in the complaint, and alleged that said relocations were valid at the time of making them, for the reason that the ground was open for location, the plaintiff having failed during the year 1903 to perform the annual assessment work on said claims, and that plaintiff prior to the date of location had failed to resume labor thereon. The case was tried to the court, who rendered judgment for the plaintiff. The court found that the mining claims, the ownership of which was claimed by the plaintiff, were located between the year 1879 and the year 1887; that the plaintiff during the year 1903 did and performed the required annual assessment work for the group of claims, and that none of said mining claims were open to location as abandoned property during the year 1904; that the assessment work so performed consisted of the salary and expense of a keeper necessarily paid by the plaintiff for the care and preservation of the claims and improvements thereon, and in the doing of actual mining work and necessary road work upon the same; that the salary paid said keeper for said year was $1,000, and the amount paid for his living expense, as part of his compensation for his services for said year, was $460, and that a sum in excess of $500 was paid for said mining work and road work for said year 1903; that said expenditures were made in the furtherance of a plan, or general scheme, of mining and of the development of said claims as a group, and was properly done for such purpose, each and all of said claims being contiguous one to another, and being owned by the plaintiff. From the judgment for plaintiff and the overruling of their motion for a new trial, the defendants have appealed.

It appears from the record that upon the trial the defendants moved, at the close of the plaintiff's case, that the complaint be dismissed for the reason that the plaintiff had failed to establish its ownership of the claims. The refusal of the

trial court to grant the motion is assigned as error. We have examined the evidence and find that the plaintiff made out a *prima facie* case, and the motion was therefore properly overruled.

It is also assigned as error that the court improperly admitted in evidence an affidavit of assessment work made by one George W. Sanders on behalf of the plaintiff for the year 1903. As the affidavit is not incorporated into the abstract, we may not, under our rules, consider this assignment.

The findings of the court relative to the amount and value of the assessment work done and performed by the New Vulture Mining Company for the year 1903 are attacked by appellants upon the ground that the evidence does not support these findings. An examination of the evidence shows that the findings of the court, with regard to the amount and value of the actual mining work and necessary road work done upon the claims for the year 1903, are sustained by the evidence. It is argued by counsel for appellant that the court erred in including as a part of the annual assessment work done for the year 1903 the salary and living expenses of the keeper. It is contended that the evidence does not show any necessity for the maintenance of the keeper upon the property, and, there being no such necessity, the cost of such keeper cannot properly be counted as assessment work. There was much testimony put in by both parties on the question whether or not a keeper on the property was reasonably necessary during the year 1903. It was shown that in former years the property was extensively worked, and a great deal of ore, some of which was of high grade, extracted. It is in testimony that in the old workings are what are termed "pillars," which contain ore of reasonably high grade, and that it is possible for ore thieves, if the mine be unguarded, to enter these old workings and extract this ore, and in this way disturb the pillars, to the injury of the mine. It is also in testimony that there is a mill on the property containing machinery, part of which possesses a present value, a cyanide plant in fair state of preservation, a number of buildings of more or less value, and a hoist in use for the purpose of taking out water from one of the inclines. There are blacksmith tools, an assaying outfit, and other like property kept in some of the buildings. It is undoubtedly true that much of the machinery on the property is old and of comparatively little value. It is also true that many of the buildings are in bad state of repair.

The question of the necessity of a keeper for this property was, however, fairly presented by the evidence, so that we are not able to say as a matter of law that the trial court was wrong in its determination of this question. Whether or not the expenses of a keeper may be properly included as assessment work upon a mining claim or group of mining claims depends upon the circumstances of each case. Counsel for appellants argue that the case calling for the services of a keeper in such a way as to make the expense of such keeper assessment work under the law must be exceptional, relying upon the decision rendered by the supreme court of California in *Hough* v. *Hunt,* 138 Cal. 142, 94 Am. St. Rep. 17, 70 Pac. 1059. A reading of this case will show that much of what Mr. Justice Temple said in that case was dicta, for the reason that the facts before the court plainly showed that the expenditure for the keeper of a house located on a mining claim, the subject of the controversy, was clearly of no benefit to the property or to its preservation as a mining claim. We entirely agree with the court in that case, however, in its holding that where a keeper is maintained simply to comply with the law relative to assessment work and to hold the property without any intent within a reasonable time to make use for the purpose of mining of such structures as there may be thereon, and which he is employed to care for, such expenditure should not be counted as assessment work. The expenditure, to count as assessment work, must be made in good faith, and it must reasonably be of present use and benefit to the property as a mine by guarding valuable improvements made therein or thereon against deterioration or destruction, when such improvements may reasonably be said to be of value to the property as a mine. The same court and the same judge who wrote the decision in the case of *Hough* v. *Hunt,* in commenting upon an instruction to a jury that assessment work might consist, if a mine be idle, of the services of a watchman or custodian in looking after such mine and taking care of the same, said, in *Altoona Q. M. Co.* v. *Integral Q. M. Co.,* 114 Cal. 100, 45 Pac. 1047: "To constitute a general rule this would require some qualification. If this sort of care was necessary to preserve tunnels, buildings, or any structures erected to work the mine and which would be necessary in case work was resumed, I see no reason why it would not constitute work upon the mine as much as the erection of such structures in the first instance." We think this correctly states the law.

It follows, therefore, wherever it is sought to charge the salary and expenses of a keeper as assessment work, the reasonable necessity for the employment of such keeper, in view of the situation and condition of the property and its operation in the future, is one of fact to be determined by the court. In determining this question it must not be overlooked that good faith on the part of the owner of the claims is an important consideration, as it is in any question involving annual assessment work. *Wright* v. *Killian,* 132 Cal. 56, 64 Pac. 98; *Quimby* v. *Boyd,* 8 Colo. 194, 6 Pac. 462; *Justice M. Co.* v. *Barclay* (C. C.), 82 Fed. 561. The question of the necessity for a keeper on the property in question during the year 1903 was fairly presented to the trial court for decision by the evidence in the case, and his determination of that question is conclusive upon this appeal.

After the trial of the case the court ordered judgment for the plaintiff, which order was entered on the minutes of the court on December 2, 1905. The judgment was signed by the court, and is dated on the sixth day of January, 1906. A cost bill was filed by the plaintiff on January 2, 1906. The defendants moved the court to strike this cost bill from the files upon the ground that it was not filed within the statutory time of ten days after judgment. This motion was denied by the trial court, and this ruling is assigned as error. Paragraph 1557, Revised Statutes of 1901, reads: "The party in whose favor judgment is rendered and who claims his costs, shall file a statement of his costs, and shall serve a copy thereof on the opposing attorney. . . . The statement must be filed within ten days next after judgment, unless, for good cause shown, the time shall be extended by the court." The record does not show that the court extended the time for filing the cost bill, or that any application was made to the court for such an order. The question is therefore presented as to whether the date when the court ordered judgment, or the date when the written judgment was signed and filed with the clerk, is to be considered in determining the time within which, under the statute, the cost bill was required to be filed. This precise question does not seem heretofore to have been determined by this court. At this term of the court in the case of *Prescott Nat. Bank* v. *Head* (11 Ariz. 213), 90 Pac. 328, it has been held that, for purposes of appeal and filing a reporter's transcript on appeal, the term at which judgment is rendered is the term at which judgment becomes final by the

order overruling the motion for a new trial. Paragraph 1496, Revised Statutes of 1901, provides that an appeal may be taken during the term of the court at which final judgment or order is rendered. Upon the wording of the statute and its evident intent it was held in the Head case that the judgment does not become final until the motion for a new trial has been acted upon. The statute quoted on the subject of costs, it will be noted, does not refer in terms and by implication to final judgments as does the statute on the subject of appeal. There is no doubt that under our statute, as at common law, the rendition of judgment is distinct from its entry. They may or they may not be simultaneous. Thus paragraph 1442 provides that judgment may be entered in term time or vacation. Paragraph 1478 provides that a motion for new trial or in arrest of judgment, or to set aside a judgment, shall be made within five days after the rendition of verdict or judgment, if the term of court shall continue so long; if not, then before the end of the term. These provisions of the statutes clearly recognize that the rendition of judgment is the act of the court and made during term time, while the entry of judgment is the ministerial act of the clerk in filing and recording the formal judgment. The latter may be done at any time after the rendition of judgment. *Meade* v. *Scribner,* 10 Ariz. 33, 85 Pac. 730; *Babbitt* v. *Field,* 6 Ariz. 11, 52 Pac. 775. In most jurisdictions it is held that the court renders judgment when it announces its decision, and its order for judgment is entered in the minutes of the court. *Genella* v. *Relyea,* 32 Cal. 159; *Fleet* v. *Youngs,* 11 Wend. (N. Y.) 522; *Lee* v. *Tillotson,* 4 Hill (N. Y.), 27; *State* v. *Biesman,* 12 Mont. 11, 29 Pac. 535; *Barthrop* v. *Tucker,* 29 Wash. 666, 70 Pac. 120; *Schuster* v. *Bader,* 13 Colo. 329, 22 Pac. 505. We construe our statutes, therefore, to mean that whenever the time of rendition of judgment is referred to with no qualification as in the case of the time for taking an appeal, they mean the day when the court in any cause announces its decision and orders judgment, and not the day when the written judgment may be signed and filed with the clerk. This view is strengthened by the omission in our statutes to require that the judgment of the court shall be signed by the judge. Undoubtedly it is sufficient if it be entered by the clerk in the minutes. We do not intend by this, however, to disparage the prevailing practice with regard to judgments. On the contrary, we think the practice of entering formal written

judgments, signed by the judge, to be proper and commendable. The cost bill in question was not filed within ten days after rendition of judgment, and we think, therefore, that the motion made by the defendants to strike from the files should have been granted. We find no other error in the record.

The judgment is modified by striking out the costs included in the cost bill in question and awarded to the plaintiff, and, subject to such modification, the judgment is affirmed.

DOAN and NAVE, JJ., concur.

CAMPBELL, J., dissenting.—The titles to nineteen mining claims are involved in this action. The trial court found that the annual assessment work upon the claims for the year 1903 consisted of the salary and expenses of a keeper necessarily incurred in caring for and preserving the mines, to the extent of $1,460, and mining and road work to the extent of $500. The testimony discloses that in 1897, when active operation of the mines ceased, there was left upon the property a number of buildings, some mining tools, an assay outfit, a mill and cyanide plant. No use was made for mining purposes of any of the buildings, tools, or mills, during the six years previous to the attempted relocation. The testimony also shows that during these six years the buildings have become dilapidated, the machinery has rusted, the mill has become little better than scrap-iron, and perhaps no part of the equipment remains in as good condition as when work ceased. It is a matter of common knowledge that the longer such equipment is "watched" the less valuable it becomes. I think the true rule on this subject is stated in *Hough* v. *Hunt*, 138 Cal. 142, 94 Am. St. Rep. 17, 70 Pac. 1059; and that the amount expended for the salary and expenses of a caretaker in this case was not for labor performed or improvements made within the meaning of the statute.