[Civil No. 2007.    Filed June 26, 1923.]

[215 Pac. 1087.]

## UNITED VERDE EXTENSION MINING COMPANY, a Corporation, Appellant, v. DAVID H. BILES and S. P. WELLS, Appellees.

Costs—Jury Fee May be Taxed by Court Against Unsuccessful Party Without First Requiring Successful Party to Advance Fee.—Under Civil Code of 1913, paragraph 638, as amended by Laws of 1915, chapter 26, requiring that the jury fee be taxed as costs and included in judgment in the superior court, such fee may be fixed by the court at the close of the trial and included in the judgment against the unsuccessful party without first· requiring the successful party to pay such fee.

APPEAL from a judgment of the Superior Court of the County of Yavapai.    John J. Sweeney, Judge. Affirmed.

Messrs. Ellinwood & Ross and Mr. Howard Cornick, for Appellant.

Mr. Robert E. Morrison, Mr. John A. Ellis and Mr. Emmet T. Morrison, for Appellees.

McALISTER, C. J.—This is an appeal by the defendant from that portion of a judgment ordering it to pay to the clerk of the superior court the jury fee. A verdict for $1 in favor of plaintiff was returned,

See 15 C. J., p. 113.

and upon it the court rendered judgment to the following effect:

"It is therefore ordered, adjudged, and decreed that judgment be entered upon the verdict herein, and that the said plaintiffs do have and recover judgment against the said defendant for the sum of $1, and plaintiffs' costs of suit in the amount of $453.15; and it is further ordered, adjudged, and decreed by virtue of the provisions of chapter 26, Session Laws of Arizona 1915, that the defendant herein shall pay to the clerk of the above-entitled court the sum of $1,620, which said sum is hereby fixed as the jury fee to be paid by the defendant in this cause, and the same shall be paid by the clerk of the above-entitled court to the county treasurer as by law provided."

Several errors are assigned, but they each raise the one question involved, namely, the correctness of that portion of the judgment directing the defendant to pay the jury fee. This order was made in the exercise of what the court conceived to be its duty under paragraph 638 of the Civil Code, as amended by chapter 26 of the Session Laws of 1915, which reads as follows:

"(638) Costs in the superior court shall include the fees of officers, witnesses, cost of taking deposition, compensation of referees, cost of certified copies of papers or records and such other disbursements as may have been made or incurred pursuant to any order of court or agreement of parties. There shall also be included in the judgment, and taxed as costs, a jury fee, which jury fee shall be fixed by the court at the time of the rendition of the judgment, and the same shall be paid to the clerk of the court and such clerk shall pay the same to the county treasurer who shall dispose of the same as other similar moneys are disposed of; provided, that the court may at any time for good cause shown, relieve any person from the payment of such jury fee when in the opinion of the court such relief may appear proper."

Previous to its amendment this paragraph con-sisted of what is now its first sentence, and as a conse-quence no jury fee was then collectible in this state from either party, nor had been since the adoption of the Revised Code of 1913. But permitting juries in civil causes at the expense of the county did not meet the approval of the succeeding legislature; hence it amended this paragraph by adding that portion beginning, "There shall also be included in the judg-ment," for the evident purpose of compelling the parties to the action, except in those cases where for good cause shown it might, in the opinion of the court, appear proper to relieve them from doing so, to re-imburse the county for this expense. Such had been the law previous to 1913, and as far back at least as 1901, when the Revised Code of that year was adopted, though the procedure outlined in the amend-ment of 1915 for the collection of this fee and that contained in paragraph 1389, Revised Statutes of 1901, to accomplish the same end are alike in neither wording nor meaning. The latter reads:

"The party in whose favor the verdict of the jury shall be, shall pay to the clerk of the court the amount of the per diem of the jurors before the verdict shall be recorded. In case of a disagreement of the jury, the party who demanded the jury in the first instance shall pay to the clerk of the court the per diem of the jurors at the time of the discharge of the jury or within such time as the court may order. All sums so paid shall be taxed and allowed as part of the costs of the party paying the same, if judgment be finally rendered in his favor."

It appears from this, and is no doubt recalled by those attorneys residing in the state who practiced here in territorial days, that it was then required that the winning party in a civil action advance the jury fee before the verdict was recorded. In re-sponse to an inquiry by the court it was merely an-

nounced by the foreman of the jury whom the verdict was for, and, unless the amount of the per diem of the jurors trying the case were paid, it was not received or recorded. Appellant makes no reference in its brief to this procedure, but contends that under paragraph 638 the winning party must advance the jury fee and afterwards incorporate it in his cost bill or it cannot be included in or become a part of the judgment. Such a construction, however, if true, has the effect of restoring the old procedure, except as to the matter of time, in that it still requires the successful party to pay the jury fee, but permits him to do so after the verdict is recorded, instead of before; the essential thing being that it is paid in time to be included in the cost bill.

It is not claimed, however, that paragraph 638 requires in express language, as did 1389, *supra,* that the "party in whose favor the verdict" is, shall pay it, but the contention is that the provisions that it "shall be included in the judgment" and "taxed as costs" imply that he shall do so, since only the successful party recovers costs, and no items other than those actually expended can be incorporated in the cost bill. What is meant by "taxing costs"? According to 15 C. J. 175, it is the "ascertainment by itemized statement of the amount to be recovered, and the insertion of the amount in the judgment." The procedure by which this is accomplished in Arizona is found in paragraphs 640, 641 and 642 of the Civil Code of 1913, which provide, in substance, that the winning party shall, within a certain time after judgment, file a verified statement of the costs claimed by him, and serve a copy thereof upon the attorney for the opposing party, and that the clerk shall, after five days from the date of the service upon the opposing attorney, if no objections are filed, or in case they are filed as soon as they

are passed upon by the court, include the same in the judgment. These provisions are based on the assumption that the successful party has paid his costs when he files his cost bill, and were enacted for the express purpose of providing a way by which he, having been required by other provisions of the Code, namely, paragraphs 627 and 635, to pay them at the time the services were rendered, may have them included in the judgment to be returned to him by the losing party. And necessarily they do not direct him to do something he is presumed by their very enactment to have already done. Since, then, costs are paid originally because of the definite requirements of paragraphs 627 and 635, and not because the provisions prescribing the method by which they are taxed, it is not apparent how the expression, the jury fee shall be "taxed as costs," can be construed as directing the successful party to pay it. It is no better authority for the advancement by the judgment creditor of the jury fee than the procedure for taxing the filing fee, witness fees or any other item of costs is for their payment originally. If it had been the intention of the legislature, when amending paragraph 638, to require the winner to advance this fee, it could have, and, in view of the old procedure, doubtless would have, manifested this intention in express provisions similar to those of paragraph 1389 of the Code of 1901, under which it was required, and the fact that it did not do so indicates that such was not its intention.

If the successful party were liable for this fee at any stage of the proceedings, it would be after judgment, because its amount is not known previous to that time, the language of the statute being, "it shall be fixed by the court at the time of the rendition of judgment." In this respect it would be unlike other costs, which are payable when the service is

performed; but, the judgment being rendered and the jury fee fixed at the same time, the payment of the latter cannot be made a condition precedent to the rendition of the former. And, while the court has control of its judgment, and can make the orders necessary to enforce it, there is no language in paragraph 638 or elsewhere justifying the conclusion that its enforcement may be made to depend upon the payment of this fee by the judgment creditor, unless it be the expressions "it shall also be included in the judgment" and "taxed as costs." These terms, however, cannot be construed as authorizing such procedure because the payment of costs originally is no part of the process of taxing them, and to say the jury fee "shall be taxed as costs" can only mean that it shall be taxed in the same manner other costs are taxed, which does not imply necessarily that it shall be included in the same cost bill, and taxed in the name and for the benefit of the same person, that is, the successful party, but merely that the amount claimed shall be made known and included in the judgment in the same way as his.

It is contended, however, that no one except the party who recovers judgment can recover costs, since a judgment is the "final determination of the rights of the *parties* in an action or proceeding" (1 Black on Judgments, 2d ed., § 1), and " 'taxable costs' are allowances made to the *successful party to reimburse him for the disbursements* made in prosecuting or defending a suit" (*Hygienic Chemical Co.* v. *Provident Chemical Works,* 176 Fed. 525, 100 C. C. A. 121). If this be true, the county, not being a party, cannot recover the per diem of jurors except through the agency of the successful party, notwithstanding it incurs this expense for the benefit of the litigants in every civil jury case.

But paragraph 638 was evidently amended for the purpose of restoring the policy of reimbursing the county for the jury fee, and, as we see it, the court, the clerk, and the judgment, instead of the winning party, are made the instrumentalities through which this is accomplished. To carry the statute into effect the first requirement is that the court fix the amount of this fee, whereupon it becomes the duty of the clerk to enter the order so made and include it in the judgment; and there is no language from which it can be understood, not even the term "it shall be taxed as costs" so implies, that he do this upon condition that the successful party first advance the fee to him. The fixing of it by the court and the entry of the order upon his records by the clerk perform for the county the same function the cost bill does for the successful party, which is to disclose the amount claimed, first, to the losing party, in order that he may object to any item he thinks improper; second, to the court, that it may pass upon and settle it when objected to; and, third, to the clerk, that he may include it in the judgment. No better information concerning the amount of the fee, nor of the fact that it is claimed, could be gained from the one than from the other. The fact that the loser is permitted to object and be heard on his objection to any item of the cost bill is satisfied by the provision that the jury fee shall be fixed at the time of the rendition of judgment when all parties are in court and have an opportunity to object and state their reasons. And the suggestion that five days' time is allowed for filing objections is answered by the last portion of the paragraph, which permits the court at any time, for good cause shown, to relieve any person from the payment of the fee when, in the opinion of the court, it may appear proper to do so. Hence, when the fee has been fixed and the order entered, nothing

remains to be done to complete the taxing of this item of cost, except the inclusion of it in the judgment, and this is really done when the order is entered because the entry of the judgment containing it is including it therein.

Since the purpose of the statute is to reimburse the county, it was clearly intended by the legislature that this fee should be paid in every case in which there is no reason why the one whose duty it is to pay it should be relieved from it. But to require the successful party to advance it does not accomplish this end in many cases, because it is frequently impossible, and often works a great hardship for him to do so, yet to relieve him relieves the losing party as well, even though no reason exists therefor, since the loser is required to pay to the winner only the costs he has expended and included in his cost bill; and its advancement in cases in which the judgment debtor might be able to show good cause why he should be relieved from paying it places it beyond the power of the court to grant relief, since the successful party is entitled to judgment for his costs. Inasmuch, then, as the temporary relief of the winner means the permanent relief of the loser, it follows that the proviso was intended to relieve against the final payment of this fee, rather than against the temporary advancement of it. No other construction enables the court to collect the fee when in its opinion the judgment debtor should pay it, and to relieve against its payment when it appears proper to do so.

After the fee has been fixed and included in the judgment, that is, taxed as costs, it is required that it "be paid to the clerk of the court," who then pays it to the county treasurer. By its inclusion in the judgment it becomes an obligation of the judgment debtor, to be discharged by him as the statute directs, by paying it to the clerk. Previous to that

25 Ariz.—17

time, however, it is the distinct obligation of neither, since one party, as much so as the other, incurred it, and under the statute the service rendered by the jury—a part of the court, irrespective of who demanded it, is as much for one as for the other. Hence, the provision that "all costs are payable at the time when the service is rendered" refers to the costs of the party, and not to the jury fee, which in reality is costs of the county. Having been awarded the judgment, the payment of this fee is of no concern to the successful party, but interests only the court and the judgment debtor. Such a course fully protects the county, because this portion of the judgment can be paid to the clerk as readily as to the successful party in all cases in which its payment is not excused by the court, and it does not penalize the party who recovers judgment by compelling him to advance it when it is impossible or works a great hardship for him to do so, by depriving him of its use for a period of time, perhaps during the pendency of an appeal, and by causing him to risk its recovery in all cases and to lose it entirely in some. It was not the purpose of the statute that he should be thus punished for proving that he was right in his contention.

Clearly, it was not intended that the reimbursement of the county for this fee should depend upon a thing so uncertain as the voluntary payment of it by the successful party; yet the contention of appellant that the judgment debtor is required to pay it only when the judgment creditor has advanced it and put it in his cost bill leads to this result, because there is no provision of the statute expressly stating or even implying that the court may withhold judgment or deny its enforcement until the successful party has paid it. Such a construction would defeat the very purpose of the statute, for the successful litigant who would be willing to deprive himself of

the amount of this fee for a short time even, and run the risk of recovering it from the losing party, merely to aid the county, would appear very rarely indeed.

Such procedure is unlike that of any other jurisdiction, so far as disclosed by our investigation, but it was clearly within the power of the legislature to adopt it, and we know of no reason why the judgment of the court entered in accordance therewith may not be enforced by execution as in other cases, the executing officer observing the directions of the law (paragraph 638, *supra*) to pay the jury fee to the clerk of the court instead of the judgment creditor. The novel and unusual way adopted by the legislature to afford litigants in cases, if desired, a jury trial, without compelling the advancement of a jury fee, and still protect the county from that expense, when the court is of the opinion that the losing party is able and should pay, is no reason for its rejection. Because this plan has not been heretofore in use in this or any other jurisdiction does not mean the legislature may not adopt it. If it does not contravene any constitutional provision, state or federal, its novelty should not condemn it, or cause the courts to hesitate to carry it out exactly as intended.

The judgment directing the appellant to pay the jury fee to the clerk of the court is affirmed.

ROSS, J., concurs.

LYMAN, J., Dissenting.—This appeal is from an order of the superior court directing the defendant, United Verde Extension Mining Company, a corporation, to pay to the clerk of the court the sum of $1,620 jury fee. The jury returned a verdict for the plaintiff for $1. Thereupon the court entered an order "that the jury fees herein be assessed prior

to judgment." Subsequently two other orders appear upon the minute entries in the following words:

"It is ordered, adjudged, and decreed that judgment be entered upon the verdict herein, and that the plaintiffs do have and recover judgment against the defendant for the sum of $1 and plaintiffs' costs of suit in the amount of $453.15; and it is further ordered, adjudged, and decreed that, by virtue of the provisions of chapter 26, Session Laws of Arizona 1915, the defendant herein shall pay to the clerk of the above-entitled court the sum of $1,620, which said sum is hereby fixed as the jury fee to be paid by the defendant in this cause, and the same shall be paid by the clerk of the above-entitled court to the county treasurer as by law provided."

These two orders, without change of word, were incorporated in an instrument which was signed by the court as the final judgment in the cause. While the record discloses no order in terms directing the entry of judgment "in accordance with the verdict," the judgment for the plaintiff in the sum of $1, together with his costs of suit, in form, at least, is in accord with the verdict. The order above quoted, directing the payment of a jury fee to the clerk, is the basis of this appeal.

This order, which is in form a part of the judgment, declares itself to be made "by virtue of the provisions of chapter 26, Session Laws of Arizona 1915," and in that statute must be found whatever authority there is for it. If the court in making this order was guided by and strictly followed the statute referred to, and if this is such an order as the statute contemplates that the court is required to make in the premises, then it is a valid exercise of judicial authority. Otherwise it cannot be upheld. The act referred to is as follows:

"(638) Costs in the superior court shall include the fees of officers, witnesses, cost of taking deposi-

tions, compensation of referees, cost of certified copies of papers or records and such other disbursements as may have been made or incurred pursuant to any order of court or agreement of parties.  There shall also be included in the judgment, and taxed as costs, a jury fee, which jury fee shall be fixed by the court at the time of the rendition of the judgment, and the same shall be paid to the clerk of the court and such clerk shall pay the same to the county treasurer who shall dispose of the same as other similar moneys are disposed of; provided, that the court may at any time for good cause shown, relieve any person from the payment of such jury fee when in the opinion of the court such relief may appear proper.''

This is an amendment of that chapter of the Civil Code entitled ''Costs,'' wherein the legislature has indicated what items of expense incident to litigation may be taxed as costs against the losing party, and provides in detail the procedure by which such costs shall be taxed.  These various provisions, though embodied in several separate paragraphs, are all upon the same subject, and are *in pari materia,* and must, therefore, like all such statutes, be considered and construed together. *Manuel* v. *Manuel,* 13 Ohio St. 458.

The amended paragraph does not lose its place and association with other related parts of the Code by reason of being amended, but from the date of amendment is treated, considered, and construed in the future as though in its amended form it had occupied its place in the Code from the beginning.  It must be construed harmoniously with the rest of the chapter.  2 Lewis' Suth. Stat. Const. 484; *Harrell* v. *Harrell,* 8 Fla. 46; 1 Lewis' Suth. Stat. Const. 237; *Farrell* v. *State,* 54 N. J. L. 421, 24 Atl. 725.

This statute, by its express terms, and by reason of its character and the subject with which it deals, is mandatory.  The form of the language is peremp-

tory. The directions are introduced by the word *shall,* which of itself indicates that the lawmakers intended that their directions should be carried out in the way that they were given, and they took precaution to use words which admit of no doubt as to such intent. *O'Rear* v. *Crum,* 135 Ill. 294, 25 N. E. 1097.

There is another reason why the statute is mandatory. It provides for imposing a pecuniary burden upon a certain class of persons which had not theretofore, by any other provision of law, existed, and in the same connection provides the manner and means by which that burden should be imposed. Such legislative enactments, in whatever language couched, are mandatory both as to the imposition of the burden, and as to the method by which it shall be legally imposed. They are also strictly construed. 2 Lewis' Suth. Stat. Const. 627, 632; *Collins* v. *Carman,* 5 Md. 503.

The burden of paying the expense of the jury immediately previous to the enactment of this statute had not been imposed upon parties to the litigation. The statute in question directed the imposition of a new burden, and it pointed out in detail the procedure which must be followed in order to make such burden lawful. *Hudson* v. *Jefferson County Court,* 28 Ark. 359.

"When a power to affect property is conferred by a statute upon those who have no personal interest in it, such power can be exercised only in the manner and under the circumstances specified. Strict compliance is necessary in all the essential prerequisites; and this makes the statute mandatory." *Kock* v. *Bridges,* 45 Miss. 257.

This statute directs that a jury fee shall be "fixed" by the court at the time of the rendition of judgment. The sole duty imposed upon the court in that con-

nection is to fix the fee. The word "fix" means "to make definite, to determine, to settle." The court gave effect to this obvious sense in which the word is used in the statute, and did fix and determine the amount of the fee at the sum of $1,620. Beyond fixing the fee, no other power or duty is vested in the court in that connection, and therefore none can be assumed or lawfully exercised. 2 Lewis' Suth. Stat. Const. 564. So elementary a principle of statutory construction would seem to call for no precedent.

The court, however, went further, and, besides fixing the fee, it also, at the same time, made an order that the defendant pay to the clerk the sum of $1,620 as jury fee. Nothing in the language of the statute required or permitted or authorized the court to make any such order. The court might with equal right have ordered the defendant to pay the clerk other items of cost without taxation.

It is not claimed that express authority can anywhere be found for this order; but counsel for appellee seek to find some "inherent right" in the court to direct the defendant to pay the jury fee to the clerk. If such right exists, it must be implied from other powers expressly given, since costs are purely the creation of statute, and were unknown to the common law. In the absence of such enactments, courts have no general jurisdiction to impose. costs. The imposition of such charges is in derogation to the common law, and all acts providing that costs may be recovered, as well as providing a means for their recovery, are strictly construed. The Supreme Court of California, commenting upon this subject, says:

"The party entitled to costs was required to claim them in a particular manner, and the consequence

attached to a failure was, that they should be considered waived." *Chapin* v. *Broder,* 16 Cal. 403.

*Kinsley* v. *New Vulture Mining Co.,* 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135.

The express direction to do one thing is exclusive of the right to exercise any further or different authority over the subject matter. Affirmatives in statutes that introduce a new rule imply a negative of all that is not within the purview. 1 Kent's Commentaries, 5th ed., 467, note. Affirmative words in a statute do sometimes, and it is believed where the public is concerned in the performance of official duties that it always implies a negative of what is not performed as strongly as if expressed. (Id.) And where a statute limits a thing to be done in a particular form, it includes in itself a negative, viz., that it shall not be done otherwise. (Id.); *Bryan* v. *Sundberg,* 5 Tex. 418; *Hudson* v. *Jefferson County Court,* 28 Ark. 359; *Koch* v. *Bridges,* 45 Miss. 247; *Clark* v. *Crane,* 5 Mich. 151, 71 Am. Dec. 776; *Ex parte Makinney,* 2 Cal. Unrep. 283, 3 Pac. 253.

Statutes imposing the payment of costs upon any party to litigation are of this character: Mandatory, and strictly construed. Potters' Dwarris on Statutes and Constitutions, 224; *McDougall* v. *Paterson,* 11 Com. B., 755; *Hester* v. *Commissioners of Parks,* 84 Mich. 450, 47 N. W. 1097; *Auditor General* v. *Baker,* 84 Mich. 113, 47 N. W. 515. In the last case cited the court says:

"As costs are purely statutory, we must hold that the power conferred upon the court by section 55 is exclusive of any other."

"And it is well settled, that statutes giving costs and officers' fees are not to be extended beyond their letter, and must be strictly construed, for the reason, as held, that costs are in the nature of a penalty." *Dawson* v. *Matthews,* 105 Ala. 485, 17 South. 19.

*Baldwin* v. *Boulware,* 82 Mo. App. 321; *Gehrke* v. *Gehrke,* 190 Ill. 166, 60 N. E. 59; *Rieker* v. *City of Danville,* 203 Ill. 191, 68 N. E. 403.

The court, in fixing liability for this jury fee upon the defendant in the manner it did, not only went beyond the letter of the law to discover some authority for so doing, but drew upon its conjecture as to the purpose and intent for which this statute was passed, and assumed that its judgment was in accord with some sort of public policy which it concludes must have animated the legislature in passing this act. Instead of finding its authority for such extraordinary latitude, the court is rightly governed in imposing costs by strict construction of the law, and it is necessary that authority for every item of cost be found in some express provision of the statute, and such burden is only recoverable when the method by which it is to be adjudicated has been explicitly followed. Statutes regulating costs are to be strictly construed in favor of the party sought to be charged, and this even in cases where private persons alone are affected. Lewis' Suth. Stat. Const., 371; *State* v. *Blackburn,* 61 Ark. 407, 33 S. W. 529.

This statute also provides that the "jury fee" shall be "taxed as costs." This, of course, cannot be done until the fee is fixed, and therefore necessarily follows the fixing of the fee by the court. The taxation of costs is no vague and indefinite process under the laws of this state. The legislative injunction to tax as costs is not a mere idle phrase, to be ignored at will, or its effect to be avoided by the substitution of some other procedure in its place. The procedure for the taxation of costs is found in this same chapter, paragraph 640, of the Civil Code, as follows:

"The party in whose favor judgment is rendered and who claims his costs, shall file a statement of his

costs, verified by the affidavit of the party or his attorney, and shall serve a copy thereof on the opposing party or his attorney. Such statement shall be filed and served within ten days after judgment, unless for good cause shown the time shall be extended by the court.''

This part of the statute, like all the rest of the paragraph, is mandatory, and by that is meant that the courts cannot substitute some other method for that pointed out by the statute. 2 Lewis' Suth. Stat. Const. 629. Costs not determined by this method cannot be recovered as a part of the judgment, and, if incorporated in the judgment without strict compliance with this procedure, will be stricken out upon application, as this court has decided in *Kinsley* v. *New Vulture Mining Co.,* 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135.

The legislature is presumed to know existing statutes and the state of the law relating to the subject with which they deal, and an amendatory act and the act amended are to be construed as one statute. Where the legislature uses a term which by its use and application in statute or decision of court has a definite meaning in the legal nomenclature of the state, they are presumed to have used it in the same sense in which it has been understood and used in the past. 2 Lewis' Suth. Stat. Const., pars. 447–449; *McFate's Appeal,* 105 Pa. 323; *Bogar* v. *Walker,* 89 Ill. App. 457; *McDougald* v. *Dougherty,* 14 Ga. 675; *Robbins* v. *Omnibus Railroad Co.,* 32 Cal. 472. In the latter case the court says, in effect, that, when two acts are *in pari materia,* or one is an amendment of the other, it will be presumed that a word used in a certain sense in the first act was used in the same sense in the subsequent one. In the present instance the amendment with which we are dealing is an amendment of the chapter relating generally to the definition and disposition of costs, and the

procedure for recovering them, and is *in pari materia* with the rest of the chapter. *State* v. *Boswell,* 104 Ind. 541, 4 N. E. 675.

It seems to be assumed that the court's order directing the payment of the jury fee to the clerk of the court somehow satisfies the requirements of the statute that the fee be taxed. This assumption is obnoxious to several objections. In the first place, the order itself was unlawful and contrary to the statute, so that no right could be based upon such action, however appropriate it might otherwise be. Second, the statute expressly provides another and different method. It says the fee shall be "taxed as costs," which obviously means as other costs are taxed. It is not pretended that any other costs are taxed by any such method, contrary to the provisions of paragraph 640 of the Code. Then, too, the legislature, having inserted this clause, "shall be taxed as costs," expected that it should be given some effect. It cannot be assumed that it was placed there for a mere idle purpose. Courts do not indulge in such assumptions with reference to the acts of the legislature. This law was passed by the legislature and signed by the Governor, and is entitled to such decent consideration from the courts as well as from the public as the Constitution of this state enjoins.

It is an elementary rule of statutory construction that every component part of the statute, including every word and clause, shall, if possible, be given force and effect in its construction and enforcement.

"That effect is to be given, if possible, to the whole instrument and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if possible, and must lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory." Cooley's Const. Lim. (5th ed.), p. 70.

*Hagenbuck* v. *Reed,* 3 Neb. 17; *Douglass* v. *Chosen Freeholders,* 38 N. J. L., 214. In the latter case the statement of the court is so aptly responsive to those who are inclined to lightly treat the acts of the legislature that it is worth while to state it as there given:

"Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity, of result, is out of place. It is no province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense, so that even if in this case it could be demonstrated that the regulation in question was incommodious, or even hurtful, an appeal for relief to the judicial power would be utterly in vain."

The courts cannot disregard the statutory provision with reference to taxing the jury fee as costs without at the same time authorizing other items of cost, which have always been regarded as proper subjects of taxation, to likewise be recovered by mere order of court. The jury fee stands in no privileged class as distinguished from some other items which the statute provides may be recovered as costs. Among the items enumerated along with the jury fees in this paragraph 638 is "compensation of referees." That item might with more propriety than the jury fee be left out of the cost bill, and be the subject of a separate and distinct judgment, if the reasoning applied to the jury fee is correct, because the court is required to fix the compensation of a referee. Paragraph 671, Rev. Stats. Ariz. The expenses incident to preserving the property held by the sheriff under attachment may be, and often are, fixed by order of court preceding the judgment. That, too, is an item of cost which has always been understood properly to have been taxed as other costs are taxed.

The same paragraph (638) provides that "such other disbursements as may have been made or incurred pursuant to any order of court" are taxable costs. The exigencies of litigation not infrequently give rise to costs incurred by orders of court; and, if the reason urged for leaving the jury fee out of the cost bill and providing for its payment by judgment in favor of the real beneficiary is sound, it should be applied in all like instances, and we might then, in some instances not difficult to foresee, have not one but a whole flock of judgments growing out of a single lawsuit, in favor of various parties, strangers to the litigation, not conforming to either pleading or verdict, a thing wholly unknown either to our statute or to any precedent for legal procedure that can be found under our system of jurisprudence.

The great vice of it all would be, not that it might be wholly unworkable, though the courts have found no occasion for such a system in the past, but it would be based upon a law not provided by legislation, but in violation of legislation, and based upon a mere court order, as illogical as it is unlawful.

Nor do I see why court orders should stop with merely disposing of costs in a manner not known to the statute. If that be sanctioned, other tedious processes now required by the statute law might, with slight evolution of this convenient instrument of the courts, to meet pressing exigencies be avoided.

The court not only violated the letter of the law, but deprived the defendant of a substantial right. The fixing of the jury fee does not involve nor require the presence in court of either one or both of the parties. It may be, and usually is, done in the absence of at least one. It is at any rate done without notice or opportunity for hearing. The order fixing the fee is not like the laws of the Medes and the Persians, unalterable, nor infallibly correct. The party who

is ultimately liable for the payment of costs is entitled to all the precautions which are provided against improper allowance of costs by the provisions of the statute by which the items and the amount are ultimately determined. It is no answer to say that something else is just as good ·when the statute has provided definitely what and how it shall be done. If the legislature intended that the jury fee should be summarily disposed of by court order, why did it not say so, and why did it say that the fee should be taxed as costs and included in the judgment? The two things are made irreconcilably different by law, and laws cannot be frittered away by mere words.

The same paragraph also requires that the fee shall be included in the judgment. This, too, was not done, but instead it was included in a separate and distinct order attached to the judgment, and not in conformity with the verdict. The judgment must conform to the verdict and the pleadings.

"The judgment of the court shall conform to the pleadings, the nature of the case proved, and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." Paragraph 548, Rev. Stats. Ariz.

The pleading states a cause of action, and prays judgment in favor of Biles and against United Verde Extension Mining Company. The verdict is for Biles and against the United Verde Extension Mining Company. The judgment must be for Biles, for $1 and costs, taxed and allowed. This so-called judgment is not in favor of any party to the action, but is for the clerk of the court, not a party to the action. Conformity to pleading and verdict requires that the judgment conform to the parties named in the pleading and the verdict. This is the general rule. 1 Black on Judgments, 186; *Morsch* v. *Besack,* 52 Neb. 502, 72 N. W. 953.

The theory upon which this departure in the form of the judgment from the pleading and verdict seeks to justify itself is that, since the clerk is entitled to receive the fee, judgment may forthwith be made in favor of the clerk. It is not, however, any unusual thing that costs must be paid to public officers. In fact, most of the costs are paid to public officers, this being no exception. The judgment creditor is a trustee for the recovery of costs. He is required to receive and disburse to the officers ultimately entitled to receive them. In *State* v. *Ashbrook*, 40 Mo. App. 64, it is said:

"The party in whose name the costs are recovered, is, in respect of them, at most, a trustee of a dry trust."

To the same effect is *Aiken* v. *Smith*, 57 Fed. 423, 6 C. C. A. 414, where it is said:

"The general decree gives costs nominally to a party in the action, but in reality nothing passes . . . into his hands beyond the reimbursement of witnesses' fees or advances actually made by him."

*Collins* v. *Hathaway*, Fed. Cas. No. 3014, Olcott, 177.

Even in those jurisdictions where unpaid costs belong absolutely to the officer rendering the service, not only the judgment for such costs, but the execution, as well, must run in favor of a party to the litigation. *Smith* v. *Van Bebber*, 1 Swan (Tenn.), 110; *De la Garza* v. *Carolan*, 31 Tex. 387; *Carey* v. *Campbell*, 3 Sneed (Tenn.), 62.

In the case of *Patterson* v. *Officers of Circuit Court of Mobile*, 11 Ala. 740, the same proceeding was attempted for the recovery of costs ultimately due to the officers of the court, as followed by the court in the present instance and under a statute relating to the recovery of costs similar to ours. The court said:

"Nor indeed do we know of any authority for the rendition of a judgment in favor of the officers of a court for costs, either collectively by that appellation, or in favor of each individually, for a separate proportion. Our statute authorizing a judgment for costs, gives it to 'the party in whose favor judgment shall be given.' Clay's Dig. 316, § 20. A judgment for a cost then is an incident of the judgment in the cause, and must be in favor of, and against a party to the cause. It is manifest the officers of the court are not parties to the suit. The judgment when rendered is, unless otherwise directed, a judgment for costs also, against the unsuccessful party. . . . The judgment in favor of the 'officers of the court' by that appellation, is such a nullity that no execution could issue upon it, and if one should issue, it would be superseded and quashed."

*Danforth* v. *McClellan,* 196 Ala. 587, 72 South. 104; *Tucker* v. *Gillespie,* 169 Ala. 491, 53 South 909; *Smith* v. *Perkins,* 81 Tex. 152, 26 Am. St. Rep. 794, 16 S. W. 805.

The statement of the law with reference to judgments for costs is even more broad in a New Hampshire case, *Winship* v. *Conner,* 43 N. H. 167, where it is said:

"No person can have a judgment for costs unless he is a party to the suit or proceeding in court; nor can a judgment be rendered against him for costs, unless he is such party."

Not only was the jury fee not included in any such judgment as conformed to the verdict, or to pleading, but the failure to do so is not justified by any requirement of the statute, even as an expedient for any supposed necessity for securing the payment of the fee to the clerk.

The order appealed from is so obviously without support in the express provisions of the statute which is cited for its authority that resort is had to what is called the policy and purpose of the legislature in this enactment. It is said the purpose of the

law is to reimburse the county for the expense of the jury, and the order in question is admirably designed to effect that purpose; therefore the order should stand. If all that were conceded, it still is something very different from the statute itself; nor can it by any process of reasoning be reconciled with the method pointed out by the statute. The Constitution and laws have committed to the courts certain well-defined duties. I do not find among them the duty or the power to ignore the plain mandates of the legislature, nor the right to exercise functions not authorized by law, though it all be done under the pious guise of making a better law than the legislature had made. The Supreme Court of the United States, in defining the duty of the court, has said:

"Our province is to declare what the law is, and not, under the guise of interpretation or under the influence of what may be surmised to be the policy of the government, so to depart from sound rules of construction, as in effect to adjudge that to be law which Congress has not enacted as such." *Dewey* v. *United States,* 178 U. S. 510, 44 L. Ed. 1170, 20 Sup. Ct. Rep. 981; *Re Abbottsford,* 98 U. S. 440, 25 L. Ed. 168 (see, also, Rose's U. S. Notes).

The same court has further expressed itself as follows:

"What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes." *Hadden* v. *The Collector,* 5 Wall. 107, 18 L. Ed. 518 (see, also, Rose's U. S. Notes).

The duty of the court in the premises is generally defined substantially as follows:

"The question is not so much what did the Legislature intend to enact, as what did it mean by what

25 Ariz.—18

it did enact." *Slingluff* v. *Weaver,* 66 Ohio St. 621, 64 N. E. 574.

"What the legislative intent was can be derived only from the words they have used; and we cannot speculate beyond the reasonable import of those words. The spirit of the act must be extracted from the words of the act, and not from conjectures *aliunde.*" *Gardner* v. *Collins,* 2 Pet. 58, 7 L. Ed. 347.

"Courts cannot correct supposed errors, omissions or defects in legislation." *McCluskey* v. *Cromwell,* 11 N. Y. 593.

"The legislative body is the supreme power of the state, and whenever it acts within the pale of constitutional authority the judiciary is bound by it, and it is not competent to the latter tribunal to dispense with a regulation or requisition plainly prescribed by the former, or to say that this mode, that, or the other, is as good as the one dictated by the Legislature; for this, in fact, would be placing the judiciary above the Legislature by enabling the former to nullify the acts of the latter, or to supersede them by substitutes to which the Legislature might not have assented had the proposition been submitted to it." *Koch and Others* v. *Bridges,* 45 Miss. 257.

"Where the object of the legislature is plain and the words of the act unequivocal, courts ought to adopt such a construction as will best effectuate the intention of the Legislature; but they must not, even when giving effect to what they *suppose* to be the intention of the Legislature, put upon the provision of a statute a construction not supported by the words, even though the consequence should be to defeat the object of the act. Dwarris on Statutes, 702; Smith's Con. 830, § 714. The fittest course in all cases where the intention of the Legislature is brought in question is, to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the act, rather than to enter upon an inquiry as to the supposed intention." *Frye* v. *C., B. & Q. R. R. Co.,* 73 Ill. 399.

*Benton* v. *Wickwire,* 54 N. Y. 226.

In *Ingalls* v. *Cole,* 47 Me. 530, Justice KENT says:

"We must take the law as we find it, and construe it according to its plain import. We cannot go beyond this, and base our decision upon arguments drawn from the expediency or from what we might deem inconveniences or even hardships."

Judged by the standards established by these authorities, it is not possible to find any basis for this order. The assumption, however, that this statute has some inherent defect which makes its enforcement impractical under a literal construction is wholly assumed and imaginary. This law, as the court is expected to take judicial knowledge, has since its passage, with few exceptions, been enforced and given effect to as it was written.

"The greatest deference is shown by the courts to the interpretation put upon the Constitution by the Legislature, in the enactment of laws and other practical application of constitutional provisions has had the silent acquiescence of the people, including the legal profession and the judiciary and especially when injurious results would follow the disturbing of it. The deference due to such legislative exposition is said to be all the more signal when the latter is made almost contemporaneously with the establishment of the Constitution, and may be supposed to result from the same views of policy and modes of reason that prevailed among the framers of the instrument thus expounded." Endlich on Interpretation of Statutes, 527.

Whether such enforcement has resulted in more or less money to the county than would have been recovered had the construction been given to it which appellee contends for it is not our business to inquire; nor is it our business to inquire whether or not, in some instances, or even in every instance, the plan adopted by the appellee would operate more beneficially to the parties to the litigation. The legislative branch of this state has settled all those questions, and, when the welfare of this state requires

that it shall be changed, no doubt the legislative department will perform its function, and change it. In any event, no law can be so bad as to warrant a court in stepping outside the sphere marked out for it by the Constitution of this state.

.The order appealed from is foreign to the laws and procedure of this state, and should be stricken out, as was done by this court in *Kinsley* v. *New Vulture Mining Co.*, 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135.