STATE OF MISSOURI at the relation of and to the use of LIVINGSTON COUNTY, Appellant, v. VIRGIL B. HUNT and THE WESTERN CASUALTY AND SURETY COMPANY of Fort Scott, Kansas, a Corporation.—152 S. W. (2d) 77.

Division Two, June 10, 1941.

*Charles S. Greenwood* and *R. B. Taylor* for appellant.

*Kitt & Kitt* and *Chapman & Chapman* for respondents.

1154

1156

COOLEY, C.—At the time this suit was filed in the Circuit Court of Livingston County, December 16, 1937, defendant Hunt was clerk of said court and defendant Western Casualty and Surety Company was surety on his official bond. By its petition plaintiff sought to recover on Hunt's bond for alleged breach thereof in failing and refusing to pay into the county treasury certain fees alleged to have been collected by him in his official capacity in excess of the amount he was authorized by law to retain. Each defendant filed a general demurrer to the petition, which the circuit court sustained. Plaintiff declined to plead further and the court entered judgment for defendants, dismissing plaintiff's suit and taxing the costs against it. Plaintiff appealed.

Hunt was elected circuit clerk and *ex officio* recorder of deeds at the November, 1934, election for a four year term beginning January 1, 1935. He gave bond in the sum of $5000, with the Western Casualty and Surety Company as surety, conditioned that he should "faithfully perform the duties of his office and pay over and account for all moneys which may come to his hands by virtue of his office" and deliver to his successor, safe and undefaced, all books, records, etc., belonging to his office. The bond was duly executed and approved. The fees in controversy were collected by Hunt in suits instituted in the Livingston County Circuit Court by drainage districts for the collection of delinquent taxes due such districts. Appellant contends that all fees earned by the circuit clerk in civil suits filed in his office, "whether drainage tax suits or otherwise" are fees earned by him in his official capacity as clerk and must be accounted for by him.

Respondents in their brief contend that under the law governing drainage districts, which they say is a "code unto itself," the fees in question were for services rendered to the drainage districts and that the clerk is entitled to keep such fees as his own, in addition to the amount he is authorized under the ordinary (or general) fee statutes to retain for himself and his deputies or assistants. For a clear understanding of the contentions of the parties and of the question on which we think this appeal must be decided certain statutes should be mentioned, viz., Sections: 11785, R. S. 1929, 13407, R. S. 1939, Mo. Stat. Ann., p. 7005; 11787, R. S. 1929, 13409, R. S. 1939, Mo. Stat. Ann., p. 7009; 11788, R. S. 1929, 13410, R. S. 1939, Mo. Stat. Ann., p. 7010; 11810, R. S. 1929, 13432, R. S. 1939, Mo. Stat. Ann., p. 7026; 11816, R. S. 1929, 13438, R. S. 1939, Mo. Stat. Ann., p. 7033. In referring to those statutes we shall, for convenience and brevity, give only the section numbers of the 1929 Revised Statutes.

Section 11785 provides a detailed schedule of fees to be received by clerks of circuit courts "in all civil proceedings" and Section 11787 provides a similarly detailed schedule for such clerks' services in criminal proceedings. Section 11788 specifies certain fees for circuit clerks in naturalization proceedings. Other statutory provisions, not necessary to mention specifically, set forth the amounts circuit clerks in counties of various populations may retain for themselves and for payment of deputies or assistants.

Section 11810 provides that every clerk of a court of record shall make return quarterly (in detail as therein provided), to the county court of all fees received by him in his official capacity to date of return, and of the salaries (also in detail) by him paid to his deputies or assistants; that the county court at each regular session shall examine "such statement" (report), may examine "any person" as to the truth of the same, allow all necessary clerk or deputy hire, not exceeding the statutory allowance therefor, and deduct same from the aggregate amount received by the clerk "and if there be an amount still in the hands of the clerk exceeding the sums specified in the next section succeeding (total amount allowed to be retained), the court shall ascertain the amount of such excess over and above the amounts allowed to be retained by the clerk and paid to deputies and assistants, and make an order directing such clerk to pay the amount so ascertained into the county treasury." There is added in such Section 11810 a proviso not affecting the issue here involved. (The "next Section succeeding," referred to in Section 11810 fixed the then aggregate amount that might be retained by the clerk for himself and for deputy hire. It has been changed by subsequent legislation but the change does not affect the question we are now called upon to decide.)

Section 11816 makes it the duty of the clerk to pay into the county treasury the amount ordered by the county court to be paid, within

fifteen days after such order is made, and take duplicate receipts therefor, one of which he shall file with the county clerk who shall charge the treasurer with the amount thereof. Said Section 11816 further provides: "If any clerk . . . shall fail to pay the amount of money so ordered to be paid into the county treasury, and file the receipt therefor, within the said fifteen days, the county court shall immediately cause suit to be commenced on the official bond of such clerk for such amounts of money, together with interest, at the rate of twenty per cent per annum from the end of said fifteen days till paid."

Plaintiff's petition does not allege, directly or indirectly, that the county court made an order that suit be commenced on Hunt's bond, or "caused" suit to be commenced. Respondents contend that the failure so to allege rendered the petition fatally defective. Appellant in its reply brief says the suit was not brought "under the provisions of Section 11816," and further that "no reports, correct or otherwise, as to the fees in controversy were filed in the county court by the defendant circuit clerk and the evidence on a trial of this case will so show."

The petition alleges Hunt's election and qualification as circuit clerk and *ex officio* recorder, the giving and approval of his bond, which is set out, the population of Livingston County and that during all the time involved circuit clerks in counties of such population were allowed to retain for their services the fees of their offices not to exceed $1900 per annum, together with fees earned in change of venue cases from other counties, and that said $1900 plus said fees in change of venue cases constituted the total amount of fees that could be retained by Hunt. (There is no mention at this point of payments to deputies. $1900 was the then statutory compensation of the clerk and did not include deputy hire.) The petition then alleges that in all cases filed in his office it was Hunt's duty as clerk to charge and collect every fee accruing to his office under the provisions of Sections 11785, 11787 and 11788, R. S. 1929, "or any other statute" of Missouri, "and to make quarterly reports thereof to the county court and quarterly such clerk shall pay into the county treasury the amount of all fees collected in excess of the sum permitted to be retained for his services or other purposes permitted by statute." (Was the phrase "or other purposes permitted by law" intended to refer to salaries paid for deputy hire? It is not explained in the petition.) The petition then pleads the alleged breach of the bond thus:

"Plaintiff further states that the defendant, Virgil B. Hunt, has been guilty of a breach of said bond, in this, that he, as the duly elected and qualified Circuit Clerk of Livingston County, Missouri, collected the sum of $9514.76 in excess of all fees and compensation allowed to be retained by him for his services or other purposes and has failed, refused and neglected to pay said excess fees into the county

treasury; that the said sum of $9514.76 represents fees required to be collected by the Circuit Clerk of Livingston County, Missouri, in certain drainage district tax suits and to be paid over by said Circuit Clerk to the treasury of Livingston County, Missouri, quarterly; that said fees together with the title and number of the case as filed in the Circuit Court of Livingston County, Missouri, and by the defendant, Virgil B. Hunt, collected, are in words and figures as follows, to-wit:"

Here follows a list of several hundred cases. We quote the first, as illustrative of all: "Nov. 1st, 1935, Rich Hill D. D. v. Crookshanks et al., case No. 32112, $1.75."

Following said list of cases the petition alleges that the county court of Livingston County, by its proper order entered of record, (date not alleged) ordered Hunt to pay into the county treasury the excess fees collected by him "over the amount payable to him and allowed to be retained by him as his compensation and for other purposes," (again "other purposes" not explained), but that said Hunt failed and refused and still fails and refuses to pay over any part of such excess. (The order of the county court is not set out.)

The petition then proceeds:

"Plaintiff further states that the total monies so collected by defendant in excess of all fees allowed to be retained by him for any purpose is Nine Thousand Five Hundred Fourteen and 76/100 ($9,514.76) Dollars.

"Plaintiff further states that by reason of the breaches of bond aforesaid and the failure of said Virgil B. Hunt to pay over to said County the fees in excess of those to be retained by him for his services and for all other purposes allowed by law, the County is damaged in and entitled to the sum of Nine Thousand Five Hundred Fourteen and 76/100 ($9,514.76) Dollars.

"Wherefore, plaintiff prays that damages be assessed and that plaintiff have judgment against the defendants for Five Thousand $5,000) Dollars, the penalty of said bond, and that execution issue against the defendants for the amount of damages that may be assessed on said bond, together with interest thereon, and for all costs and general relief."

In State ex rel. Hickory County v. Dent et al., 121 Mo. 162, 25 S. W. 924 (which for brevity we shall call the Dent case), a suit on a county clerk's bond, the suit was for arrearages in the clerk's payments to the county treasury. The case was tried, resulting in a judgment for the plaintiff, which on the defendants' appeal this court reversed. This court referred to and quoted from Section 5626, R. S. 1879, then in force, requiring every clerk of a court of record to make quarterly reports to the county court and that such court should examine the report, ascertain whether there was an excess of money in the clerk's hands over what he was entitled to retain, and if there was such excess to order the clerk to pay same into the county

treasury. The court also called attention to Section 5628, R. S. 1879, providing that if the clerk failed to obey such order within fifteen days the county court should cause suit to be commenced on his bond. The provisions of said Sections 5626 and 5628, R. S. 1879, requiring the filing by the clerk of quarterly reports, examination thereof by the county court and an order of such court to pay the excess, if any, and that upon his failure so to do the county court should cause suit to be commenced on his bond were the same as in Sections 11810 and 11816, R. S. 1929. They apply to both county and circuit clerks. In the Dent case this court held that the making of the order by the county court for the payment of the excess and that, upon the clerk's failure to pay, the county court should order suit brought, were both conditions precedent to the maintenance of the suit. It did not appear that the county court had made either of such orders. This court said, 121 Mo. l. c. 169, 25 S. W. 924:

"The general rule of the law is that, whenever a particular and statutory method of proceeding is pointed out as the one to be pursued, then such method is exclusive. And this is true, although there is a general power under which courts or officials would have been able to perform the act. Yet as the Legislature imposed a special limitation, it must be strictly pursued. [*Hudson v. County Court*, 28 Ark. 359; Sutherland on Statutory Construction, sections 454, 392, 393.]

"Under these statutory provisions and authorities, it was a *condition precedent* to Dent's being in default that the county court should have had a settlement with him and at that settlement made *an order requiring him to pay over the excess*, to which he was not entitled, into the county treasury, and it was also a *condition precedent* that, on the failure of Dent to comply with such order within fifteen days after its making, such court should *order suit to be brought on the bond of the clerk*; but neither of such orders was made. Therefore judgment reversed." (Italics the court's.)

The county court is a court of record and speaks by its record. In the Dent case the court obviously treated the language "shall·immediately cause suit to be commenced" as meaning that the county court should cause that to be done by an order of record.

State ex rel. Jackson County v. Chick et al., 146 Mo. 645, 48 S. W. 829 (*en banc*), was a suit against the sureties on a county clerk's bond to recover fees alleged to have been unlawfully withheld by the clerk. On appeal it was urged by the defendants that the petition did not state a cause of action because it did not allege that the county court, after examination of the clerk's quarterly reports, had made an order directing him to pay the money sued for into the county treasury, nor that, upon the clerk's failure to pay, the county court had directed suit to be brought. The petition in that case charged that the clerk, in his quarterly reports, failed to include the fees in

controversy, and at no time reported or accounted for them and that the county court approved the reports of fees without knowledge or information that the omitted fees had been received and not reported, and that the clerk obtained the approval of his reports by the false statements therein that they contained the total of all fees collected. The court, in holding that the petition stated a cause of action, distinguished the Dent case, saying that there the clerk made a correct report of fees received by him and there was no charge of fraud, deceit or failure to make a fair and proper return of his collections; and that "The petition in the case at bar proceeds on an entirely different theory. The charge here is, that the clerk wholly failed to report or account for the fees sued for, and that the county court was induced to approve his quarterly statements in ignorance of the fact that they had been collected, and in reliance upon the false statement that said reports contained the total fees received by him."

The court then said that the petition alleged that the county court had no knowledge or information of the collections and the clerk and his sureties could not, after his failure to mention them in his returns, escape liability or defeat the action because no order was made, upon approval of those settlements, for him to pay over the money "of which the court was kept in ignorance." The court further said that in the situation presented it was not a prerequisite that an order for suit upon the bond should have been made; that the statute making such requirement only applies when there is a failure for fifteen days to pay into the treasury the amount ascertained to be due, and "if the omission of an order to pay over the funds will not defeat this action, it follows, that the non-observance of the procedure directed to be taken for *disobedience of such order* cannot have that effect." (Italics the court's.) The court cited State ex rel. Callaway County v. Henderson, 142 Mo. 598, 44 S. W. 737, and Callaway County v. Henderson, 139 Mo. 510, 41 S. W. 241.

In State ex rel. Callaway County v. Henderson the petition alleged that the county clerk had made false quarterly returns, omitting therefrom the fees sued for and concealing the fact that he had collected them. There was no averment in the petition that the county court had complied with the statutory requirement that it ascertain the amount of excess, etc., and make an order directing the clerk to pay it into the county treasury. The court distinguished the Dent case on that point, as was done in State ex rel. v. Chick, supra, and held that as to the fees received by the clerk and not reported it could not be said they were acted upon by the county court and that "The partial returns made by the clerk and approved by the court do not stand in the way of an action at law for money had and received to the use of the county, for they only cover a certain class of fees, and were so understood by both the clerk and the court." In that case, however, the petition alleged that the county court had made

1162

an order directing suit to be brought for the excess fees. The petition was held to state a cause of action.

In Callaway County v. Henderson, supra, the Dent case is not referred to but the petition alleged that the clerk had made a "pretended return" purporting to show the total amount of fees received by him but that said return was false in that it omitted fees (those sued for) which he had collected.

State ex rel. Christian County v. Gideon et al., 158 Mo. 327, 59 S. W. 99, was a suit against the circuit clerk and *ex officio* recorder and his bondsmen to recover fees alleged to have been collected in excess of the sums he was entitled to retain. The suit was brought after the expiration of Gideon's term of office. The petition alleged that Gideon had failed to keep correct accounts of fees received and that, while he had made returns to the county court purporting to show all fees received such returns were false, omitting many fees (set out) which he had collected and had not reported; that the county court, in ignorance of the falsity and omissions of the quarterly returns had approved them, but upon discovery of the facts had made an order directing Gideon to pay into the county treasury the excess ascertained by the court to be due and when he failed to do so within fifteen days ordered suit brought on his bond. The trial court sustained a demurrer to the petition. This court reversed that action, holding the petition ·sufficient and again distinguishing (but not disapproving or criticizing) the Dent case, saying, 158 Mo. l. c. 337:

"While the statute prescribes the mode of procedure for the recovery of the balance ascertained· to be due upon the quarterly settlements of the clerk, and in such an action, it was held in State ex rel. v. Dent, 121 Mo. 162, that an order, requiring him to pay over the excess to which he was not entitled, and in case of his failure to do so, an order requiring suit to be brought on his bond, were conditions precedent, without which such action could not be maintained. It did not undertake to prescribe the mode of procedure for the recovery of damages for a breach of duty by the clerk in failing to make true and proper returns as required by the statute. The breaches assigned in the petition in this case are not for failure to pay over the excess found to be due on the settlements with the clerk, but for his failure to make true returns by which such excess could have been properly ascertained. To such a case the orders required by this statute are obviously not applicable, and their existence or averment is not essential to plaintiff's cause of action, as has been expressly ruled by this court." [Citing State ex rel. v. Chick, State ex rel. v. Henderson and Callaway County v. Henderson, supra.]

While the Dent case has been distinguished in subsequent decisions, as above pointed out, we have not been able to find any decision of this court criticizing its holding that an order of the county court to commence suit is a condition precedent to the maintenance of the

suit in a situation where Sections 11810 and 11816, R. S. 1929 are applicable.

We are inclined to think the petition in the instant case presents such a situation. The theory of the petition, and the only theory on which plaintiff can recover, if at all, is that the fees sued for are fees which accrued to Hunt's office of circuit clerk—that is, fees which he received in his official capacity as such clerk. The petition is based upon the proposition that the fees sued for are fees of that character. If so, it was Hunt's statutory duty as clerk to make quarterly reports of such fees to the county court. The petition states that it was his duty so to do, but does not allege whether he did so or not. We cannot presume that he did not do his duty in that regard, nor can we accept as an averment of the petition the statement in appellant's reply brief that no reports as to the fees in controversy were filed in the county court. The petition must be judged on a demurrer to it by what it alleges or fails to allege, not by what counsel may say in their briefs are the facts. The petition charges breach of Hunt's bond in that he failed and refused to pay the alleged excess fees into the county treasury, not that he failed to make reports correctly showing such fees, as it was his duty to do. Failure to make such reports would constitute a breach of his bond, State ex rel. v. Chick, supra, 146 Mo. l. c. 654, 48 S. W. 829, but such failure is not pleaded. If he did make such reports, as he may have done for aught that appears *in the petition,* and the county court examined them, as in such event it would have been the court's duty to do, and approved them, questions might arise that are not presented by the petition in this case.

But, on the other hand, even if we are wrong in thinking that Section 11816, R. S. 1929, is applicable under the facts as pleaded, and if Hunt did not make reports, or if he made quarterly reports but omitted therefrom the fees in controversy, as in the Chick, Henderson and Gideon cases, supra, it seems to us the petition should have so alleged, as in those cases, so as to present the issue to be tried on this question. The petition alleges that Hunt had in his hands an excess of fees of $9514.76 over the amount he was authorized to retain, and that the county court, "by its proper order entered of record" directed him to pay said excess into the county treasury, but as we have said there was no allegation as to whether or not he had made quarterly reports or if he had, that he had omitted therefrom these fees, nor any allegation as to when the county court made its order to pay over said excess. That order must have been made after September 15, 1937, because that is the date of the last item of the alleged $9514.76 excess. When or how the county court ascertained that there was such excess, or why it did not act sooner, if it sooner made such ascertainment, are matters not disclosed by the petition.

The record does not show on what ground the circuit court

sustained the demurrers. They were general demurrers, that the petition did not state facts sufficient to constitute a cause of action. If for any reason the petition so failed, the action of the circuit court must be affirmed. It is our conclusion that said demurrers were properly sustained for the reasons above indicated.

■ Both parties have briefed the question of whether the fees in controversy are fees earned by the clerk in his official capacity as clerk, like fees in civil cases generally, and to be accounted for accordingly, or whether, as respondents contend, said fees were for services rendered to the drainage districts and under Sections 10878 and 10879, R. S. 1929, Sections 12468 and 12469, R. S. 1939, Mo. Stat. Ann., p. 3578, belong to the clerk in addition to the compensation allowed under what respondents term the ordinary fee statutes and do not have to be accounted for by him. In view of our conclusion above announced, which disposes of this appeal, a discussion of this question might be considered somewhat obiter and anticipatory. If further proceedings are had in the circuit court the pleadings may present issues not presented by the petition herein. We deem it best to reserve consideration of this question for a case in which it calls for decision.

The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.